STATE OF NORTH CAROLINA v. DAVID LEE FULCHER

No. 27

(Filed 17 April 1978)

1. **Criminal Law § 43.1— photograph of defendant—admissibility for illustrative purposes**

     The trial court did not err in allowing into evidence a photograph of defendant taken by the police during the process of booking the defendant following his arrest since the victims of the crimes charged and a police officer used the photograph to illustrate their testimony, and the judge instructed the jury to consider the photograph for the purpose of illustrating testimony.

2. **Criminal Law § 43.1— police photographs of defendant—admissibility**

     In a prosecution for kidnapping and crime against nature, the trial court did not err in allowing into evidence photographs of defendant and four other people to show the exact set of photographs from which the two victims made their pre-arrest identification of their assailant; moreover, defendant was not prejudiced by introduction of the photographs of himself, taken from a front and a side view, though there was little likelihood that the jury would fail to conclude that the photographs had been taken from police files and thus that defendant had a prior criminal record, since defendant himself, by his previous cross-examination of the State's witnesses, brought into question, before the jury, the propriety of the pre-arrest identification procedures, and it was therefore proper to permit the State to show the jury the photographs used in that process.

3. **Criminal Law § 99— impartiality of judge required**

     G.S. 1-180 imposes upon the trial judge the duty of absolute impartiality and prohibits the expression by him of any opinion, express or implied, as to the credibility of any of the evidence or as to the weight to be given it.

4. **Criminal Law § 122.1— jury's request for instructions—no expression of opinion by trial court**

     The trial court did not improperly express an opinion with respect to defendant's alibi evidence where the jury requested that the testimony of two of defendant's alibi witnesses be read back to it, but the judge denied the request, saying, "I am not going to be able to allow the testimony of these various witnesses to be read back to you, for if you emphasize certain portions of it out of context it might tend to exaggerate it."

5. **Kidnapping § 1.1; Criminal Law § 80— motel registration card—admission harmless error**

     In a prosecution for kidnapping and crime against nature which occurred at a motel where the victims were staying, the trial court erred in allowing into evidence a motel registration card purporting to show that a man named David L. Fulcher had registered at the motel and occupied a certain room on the day of the offense with which defendant was charged, since the motel manager, who testified concerning the completion, signing and keeping of

registration cards, did not purport to identify defendant as the man who signed the card in question; however, in view of the positive, in-court identification of the defendant by the two victims and the other evidence strongly corroborating their identification of him, the error in admission of the registration card must be deemed harmless beyond a reasonable doubt.

**6. Criminal Law § 83; Kidnapping § 1.1— tape restraining kidnap victims—admissibility of roll of tape**

In a prosecution for kidnapping and crime against nature where defendant bound his victims with gray, metallic colored tape, the trial court did not err in allowing defendant's brother-in-law to testify that on the day after the crimes in question were committed he observed a roll of gray, metallic colored tape fall out of defendant's car while defendant's wife was removing her possessions from the car, since the relevance of the tape to the issue of the identification of the defendant as the assailant of the two women was obvious, and since the admission into evidence of the tape did not violate G.S. 8-57 because that statute is applicable only to the spouse of a defendant and the defendant's wife's involvement in discovery of the tape did not amount to a declaration by the wife.

**7. Statutes § 5— construction—statutory question avoided**

If a statute is reasonably susceptible of two constructions, one of which will raise a serious question as to its constitutionality and the other will avoid such questions, the courts should construe the statute so as to avoid the constitutional question.

**8. Statutes § 5.1— construction—legislative intent controlling**

The cardinal principle of statutory construction is that the intent of the Legislature is controlling.

**9. Kidnapping § 1— asportation not required—substantiality of time and distance not required**

The offense of kidnapping does not require any asportation whatever where there is the requisite confinement or restraint; moreover, where the State relies upon asportation of the victim to establish a kidnapping, it is not required that the asportation be for a substantial distance, and where the State relies upon confinement or restraint, it is not required that such continue for some appreciable period of time. Hence, the Court of Appeals erred in its holding that "substantiality" in terms of distance or time is an essential of kidnapping and its pronouncements as to proper jury instructions thereon. G.S. 14-39.

**10. Kidnapping § 1— confine and restrain defined**

As used in G.S. 14-39, the term "confine" connotes some form of imprisonment within a given area, while the term "restrain," though broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement.

State v. Fulcher

**11. Kidnapping § 1— restraint to facilitate commission of other felony—when kidnapping conviction is proper**

G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of another felony such as forcible rape or armed robbery, also kidnapping so as to permit the conviction and punishment of defendant for both crimes; however, there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony.

**12. Criminal Law § 26.5; Kidnapping § 1— kidnapping and crime against nature—binding up of victims—kidnapping separate offense—no double jeopardy**

There was no violation of the constitutional provision against double jeopardy in the conviction and punishment of defendant for two crimes against nature and two crimes of kidnapping where the evidence tended to show that defendant bound the hands of each of two women, procuring their submission thereto by his threat to use a deadly weapon to inflict serious injury upon them, thus restraining each woman within the meaning of G.S. 14-39, that his purpose in so doing was to facilitate the commission of the felony of crime against nature, and that defendant did in fact commit the crime against nature upon each of the women.

ON certiorari to the Court of Appeals to review its decision, reported in 34 N.C. App. 233, 237 S.E. 2d 909, finding no error on the defendant's appeal from *Kivett, J.,* at the 6 December 1976 Session of FORSYTH. The defendant's appeal, as a matter of right, from the decision of the Court of Appeals was dismissed upon the motion of the Attorney General.

Pursuant to four separate indictments, each proper in form, the defendant was found guilty of the kidnapping of each of two young women and of forcing each of them to commit with him a crime against nature. The two charges of kidnapping were consolidated for judgment and, in those cases, the defendant was sentenced to imprisonment for 28 to 40 years. In each of the cases charging the commission of a crime against nature, the defendant was sentenced to imprisonment for 10 years, these two sentences to run consecutively with respect to each other but both to run concurrently with the sentence for kidnapping.

The defense is alibi. The defendant, a parolee from the Federal prison system, which circumstance was not made known to the jury, did not testify in his own behalf. Thus, except by virtue of defendant's plea of not guilty with reference to each

charge, the State's evidence as to the commission of the alleged offenses is not controverted and the principal issue of fact is as to the identification of the defendant as the perpetrator of them.

The defendant also contends, as a matter of law, that the sentence upon the charges of kidnapping is improper for that G.S. 14-39, which defines and prescribes the punishment for kidnapping, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States. The Court of Appeals adopted a construction of this statute which, if correct, the defendant, in oral argument, conceded would remove the basis for his contention that the statute is unconstitutional. The statute had not previously been construed by the Appellate Courts of this State.

The evidence for the State, if true, was sufficient to show:

On the evening of 8 September 1976, the two young women, on a vacation trip from their homes in Canada, reached and took lodging in Motel No. 6 in Winston-Salem. On previous visits to Winston-Salem, they had stayed at this motel. There were no telephones in the rooms of the motel but telephones available for use of its guests were at a well lighted alcove in or near the lobby, a well lighted hallway leading thereto from the room assigned to and occupied by the young women.

A few minutes after their occupancy of their room, at approximately 7:30 p.m., both of the young women went to the telephone alcove in an unsuccessful effort to place calls to their friends in the city. While so engaged, both of them observed the defendant, not previously known to them, using, or purporting to use, one of the other telephones in the alcove. Their attention was called to him by a comment which he made to one of them and by his general demeanor which they regarded as "strange." They remained in the telephone alcove on this occasion, some four feet from the defendant, for approximately fifteen minutes.

It was the custom of the motel, upon receipt of an incoming call for a guest, to send a messenger to the room of the guest to notify him or her of such call. At approximately 10:30 p.m., the defendant knocked at the door of the room occupied by these young women, who looked out through the curtain and observed that he was the man previously seen by them in the telephone

alcove. He advised them that there was a telephone call for their room. Thereupon, one of the women went to the telephone alcove where she found one of the telephones off the hook but "dead." The defendant was observed by her for "about a minute" in the well lighted alcove. She thanked him and returned to the room.

At approximately 11:00 p.m., the defendant again knocked at the door of the room and was once more recognized by the women, who looked through the glass window and observed him standing about six inches away and under a light over the door to the room. Again, he said there was a telephone call so, again, one of the young women went to the telephone alcove and again found the telephone "dead." The defendant was again standing in the alcove and said, "Someone is trying to play a joke on you." He then walked with the young woman back along the hallway to the door of her room. She observed that he was wearing a "big belt" from which a bunch of keys was hanging by a chain. In response to her inquiry, he said that he did not work at the motel. Arriving at her door, she again thanked him for his trouble and thereupon "felt something" at her side. Thinking he "was trying to be fresh," she uttered an exclamation, whereupon he pushed her into the room saying: "Don't make a sound. I've got a knife." They then went into the room where the other young woman had remained and the defendant closed the door, again saying: "I've got a knife. I can kill you. Don't make a sound. Just cooperate and everything will be okay." He did, in fact, have an open knife in his hand, the blade being about four inches in length.

The defendant then compelled the two young women to lie upon one of the beds and, taking from his pocket a roll of tape, some three inches in width and metallic gray in color, he tore off strips of the tape and with these bound the hands of each woman behind her back. While they were so bound, he compelled each of them, in turn, to commit an act of oral sex upon his person. In the course of this conduct one of the young women observed that the defendant had a small growth upon the side of his sex organ. The presence of such growth upon the defendant was observed and testified to by a medical expert who, pursuant to an order of the court, over defendant's objection, examined the defendant during the course of the trial.

State v. Fulcher

During or after the completion of the offense against the second of the young women, the first broke free from her bonds and snatched the defendant's knife. A struggle for the knife followed, during which the other young woman managed to get the door of the room open and flee down the hall to the motel lobby, whereupon the defendant fled from the room and down the hallway in the other direction, escaping from the motel.

In a matter of minutes, city police officers arrived at the motel and the women described their assailant to them in the presence of the motel manager, who immediately advised the officers that the description seemed to fit a man registered in the motel and produced the motel's registration card for the room occupied by such man, the name shown on the card being "David L. Fulcher." Over objection, this card was introduced in evidence, the manager having testified that he did not personally observe the filling out of that card by the occupant of the room, purportedly David L. Fulcher, but that it was the regular business practice of the motel to have each guest complete and sign such card, which card the motel then kept in its permanent records.

The investigating officers at once communicated with police headquarters and ascertained that the police did have a photograph of one "David L. Fulcher." This photograph and those of four other men, also taken from the police files, were immediately brought to the investigating officers at the motel and shown by them to the two young women separately. One of them advised the officers that the photograph of the defendant was a photograph of their assailant. The other young woman said that her assailant had certain resemblances to two of the subjects shown in the photographs, one of these being the defendant. Each photograph bore upon the chest of its subject a prison number, which number was covered, by order of the trial judge, before the photograph was placed in evidence before the jury.

Thereupon, the defendant was arrested at an all-night restaurant approximately a mile from the motel, the arrest being made not over two hours after the offenses were committed. At the time of his arrest, the defendant was wearing clothing, a belt and bunch of keys fitting the description of the clothing, belt and keys worn by their assailant given by the two young women to the investigating officers immediately after they were attacked.

The defendant's own physical description then also fit that given by the two young women of their assailant. The photograph, having been made several years before, showed him as substantially younger and thinner.

When the defendant was arrested, his car was impounded by the police. It was released to the defendant's brother the following day. On that day, the defendant's wife, from whom he was separated, went with her brother to the car and, with the consent of the defendant's brother, in whose custody it was, opened the door of the car and removed therefrom her clothing and other belongings. As she did so, a roll of gray, metallic colored tape fell out of the car onto the ground. It was picked up by the brother of the defendant's wife and was later delivered by him to the investigating police officers. This roll of tape, identified by the two young women as the roll possessed and used by their assailant, was introduced in evidence over objection. Strips of tape used by their assailant in binding and gagging the two young women were also introduced in evidence.

*Rufus L. Edmisten, Attorney General, by Henry H. Burgwyn, Associate Attorney, for the State.*

*J. Randolph Cresenzo for Defendant.*

LAKE, Justice.

Upon his appeal to the Court of Appeals, the defendant, in his case on appeal, assigned 25 alleged errors in rulings by the trial court. Eleven of these were not brought forward into the brief filed by him in the Court of Appeals and are, therefore, deemed abandoned. Rule 28(a) of the Rules of Appellate Procedure, 287 N.C. 679, 741. Six of the remainder have not been brought forward into the defendant's brief filed in this Court and these are, likewise, abandoned. Rules 16(a) and 28(a) of the Rules of Appellate Procedure, *supra.*

As stated in Rule 16(a): "Review by the Supreme Court after a determination by the Court of Appeals, whether by appeal of right or by discretionary review, is to determine whether there is error of law in the decision of the Court of Appeals. Review is limited to consideration of the questions properly presented in the new briefs required by Rules 14(d)(1) and 15(g)(2) to be filed

in the Supreme Court." We, therefore, shall discuss only the defendant's Assignments of Error Nos. 2, 3, 7, 15, 18, 19, 23 and 24, several of these being grouped together for the purpose of discussion. Due, however, to the serious nature of the offenses of which the defendant has been found guilty and of the sentences imposed, we have given consideration to all of the defendant's assignments of error and we find no merit in any of those so deemed abandoned.

We turn our attention first to the defendant's contentions with reference to the admission of evidence and alleged expressions of opinions by the trial judge concerning such evidence, these contentions relating to Assignments of Error Nos. 2, 3, 7, 15, 18 and 19. These contentions relate both to the convictions for the crimes against nature and to the convictions for the offenses of kidnapping and are primarily concerned with the matter of the identification of the defendant as the assailant of the two women.

[1] Defendant's Assignments of Error Nos. 2 and 3 relate to the admission in evidence, over his objection, of photographs, State's Exhibits 3 and 5. The State's Exhibit 3 is a photograph taken by the police during the process of booking the defendant following his arrest, some two hours after the offenses are alleged to have been committed. An officer present at the taking of the photograph testified that it fairly and accurately portrayed the appearance of the defendant at that time. Each of the two women testified that it fairly and accurately portrayed the defendant as he appeared to them at the time of these offenses. Each of the three witnesses testified that he or she could use this photograph to illustrate his or her testimony concerning the appearance and dress of the defendant at the time of his arrest, with reference to the police officer, and at the time he was in their room, with respect to the women. Each such witness then described the appearance and costume of the defendant at the time in question, using the photograph to illustrate such testimony. The court, in admitting the exhibit into evidence, instructed the jury, "You may consider the photograph for the purpose of illustrating and explaining his testimony and the testimony of the girls, when testified by them at an earlier time." In this ruling there was no error. *State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976); Stansbury, North Carolina Evidence, Brandis' Rev., § 34.

State v. Fulcher

[2] The State's Exhibit No. 5 consisted of five pairs of photographs (front and side views of each subject), one each of the defendant and four other individuals. The photographs of the defendant had been taken several years earlier when he was thinner and his hair was cut differently. All of the photographs were obtained by the investigating officer from photograph files at the police station within minutes after the offenses were committed and after the manager of the motel had stated to the investigating officer that the description by the two women of their assailant seemed to be a description of a guest in the motel, the motel registration card for whom bore the name David L. Fulcher. These photographs were promptly exhibited to the two women, separately, with no suggestion by the investigating officer as to which was a photograph of the suspect. One of the young women positively identified the photograph of the defendant as a photograph of the assailant. The other was uncertain as between the photograph of the defendant and the photograph of one of the other subjects, saying that each bore some resemblance to the assailant.

Exhibit No. 5 was admitted into evidence without any limiting instruction, none being requested. In this there was no error. Exhibit No. 5 was not offered or used at the trial to illustrate the appearance of the defendant at the time of the commission of the offenses or to illustrate the testimony of any witness concerning this. The purpose of this exhibit was to show, as it did, the exact set of photographs from which the two young women made their pre-arrest identification of their assailant. The photographs were not illustrative, but substantive evidence of that matter and were properly admitted in evidence for that purpose, if not otherwise objectionable.

The defendant contends that Exhibit No. 5 (specifically the defendant's two photographs appearing therein) was otherwise, objectionable for the reason that the photographs brought to the jury's attention the circumstance that the defendant had a prior criminal record. Each such photograph, in its original form, bore upon the chest of the subject a plaque showing a prison number, this being supported by a small chain around the neck of the subject. Before the photographs were admitted in evidence, the number so shown was covered so that it was not visible to the viewer of the photograph. The defendant contends, however, that

the chain around the neck of the subject of each photograph remained visible so that it was obvious that the photograph was a "Rogue's gallery" picture. He further contends that the covering of the numbers before the photographs were exhibited to the jury did not make the nature of the photographs less apparent.

It is unquestionably true, as the defendant contends, that when a defendant charged with a criminal offense does not take the stand as a witness and does not offer evidence of his good character, the State cannot offer evidence of his bad character, including his previous criminal record, nothing else appearing. *State v. Williams*, 292 N.C. 391, 233 S.E. 2d 507 (1977); *State v. Shrader*, 290 N.C. 253, 264, 225 S.E. 2d 522 (1976); Sizemore, Character Evidence in Criminal Cases in North Carolina, 7 Wake Forest Law Rev., 17, 30 (1970); Stansbury, North Carolina Evidence, Brandis' Rev., § 104 (1973).

On cross-examination, before the jury, of each of the young women, the defendant had previously developed the fact that the investigating officers showed the young women five photographs in the pre-arrest identification procedure and had further developed differences between the appearance of the other subjects of these photographs and the description of their assailant given by the women to the officers. The obvious purpose of such cross-examination was to discredit the identification by the women of the defendant as their assailant. Under these circumstances, it was clearly permissible for the State to put the photographs in evidence for the consideration of the jury.

In *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970), prearrest identification procedures included the showing to the victim of a single photograph, which was a photograph of the defendant taken from police files. This photograph was introduced in evidence by the State over objection. Before the photograph was so introduced, the name of the Police Department and the date appearing on the photograph in its original form were covered by an evidence tag, as was done in the present case. The defendant there, as here, contended that the introduction of this photograph tended to apprise the jury of the fact that he had been in trouble before and suggested that he had been convicted of other crimes, thereby reflecting unfavorably upon his character.

In the *Hatcher* case, *supra*, the defendant testified. Thus, evidence of prior convictions, introduced thereafter, would have been proper. It does not appear in the reported decision whether the defendant had so testified when the photograph in question was introduced in evidence. Speaking through Justice Huskins, this Court said that the covering of the above features of the photograph left nothing upon it connecting the defendant with previous criminal offenses, so that the photograph was "only an ordinary photograph, which was offered and admitted for illustrative purposes bearing upon identification of defendant." We held, "[T]he photograph, with inscription and date deleted, was properly admitted for illustrative purposes on the question of identity."

The present case is not entirely within the coverage of *State v. Hatcher, supra*. In the present case, the double photograph (front and side view on the same card) of each of the four subjects, with or without the small chain visible about the neck of the subject, is so similar in style to photographs of "wanted men" displayed in post office lobbies across the nation as to leave little likelihood that the jury would fail to conclude that these were photographs taken from police files. Thus, the use of them almost inevitably conveyed to the jury the circumstance that the defendant had had prior experience with police photography and thus tended to show bad character. However, the defendant having, by his previous cross-examination of the State's witnesses, brought into question, before the jury, the propriety of the pre-arrest identification procedures, there was no prejudicial error in permitting the State to show the jury the photographs used in that process. There is, therefore, no merit in the defendant's Assignments of Error Nos. 2 and 3.

[3] The defendant's next contention (Assignment of Error No. 7) is that in five instances the trial judge expressed an opinion with reference to the evidence, in violation of G.S. 1-180. As the defendant asserts, this statute imposes upon the trial judge the duty of absolute impartiality and prohibits the expression by him of any opinion, express or implied, as to the credibility of any of the evidence or as to the weight to be given it. *State v. Holden*, 280 N.C. 426, 185 S.E. 2d 889 (1972). The flaw in the defendant's contention is that in none of the five instances to which this

assignment of error is directed, or elsewhere in the record, was there any such expression of opinion by the trial judge.

[4] After beginning its deliberations, the jury returned to the courtroom with the request that the testimony of two of the witnesses, called by the defendant to establish an alibi, be read back to it, the foreman saying, "We cannot agree upon the testimony as to what was really said." After consultation with counsel, out of the presence of the jury, the judge denied the request, saying, "I am not going to be able to allow the testimony of these various witnesses to be read back to you, for if you emphasize certain portions of it out of context it might tend to exaggerate it."

The granting of such request by the jury is within the discretion of the trial judge. *State v. Furr*, 292 N.C. 711, 726, 235 S.E. 2d 193 (1977); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). However, we think it is generally inadvisable. See: *State v. Thomas and Wilkins*, 292 N.C. 527, 234 S.E. 2d 615 (1977).

The defendant does not contend in the present case that the denial of the request was error. His contention is that the judge's explanation of his denial was an expression of opinion that the evidence tending to establish an alibi for the defendant was of little consequence. We do not think the jury could have put such an extremely strained construction upon the judge's statement, especially in view of his clear charge upon alibi as a defense, his accurate summary of the testimony of the defendant's witnesses with reference thereto, and his instructions that it was for the jury to determine the weight to be given the evidence and that it would be "highly improper" for the jury to interpret any statement of his during the trial as indicating any intention by him to influence its verdict.

It would serve no useful purpose to discuss in detail the other instances in which the defendant now asserts the judge expressed an opinion contrary to G.S. 1-180. The record simply does not support such contention. We, therefore, find no merit in the defendant's Assignment of Error No. 7.

[5] The defendant's Assignment of Error No. 15 relates to the admission in evidence, over objection, of a motel registration card purporting to show that a man named David L. Fulcher had

registered at the motel and occupied Room No. 90 on the day of the offenses with which the defendant is charged.

The motel manager's testimony as to the business practices of the motel concerning the completion, signing and keeping of registration cards would permit the introduction of such registration card in evidence, if otherwise competent, to show that someone, representing himself to be David L. Fulcher, had so registered at the motel. *Supply Co. v. Ice Cream Co.*, 232 N.C. 684, 61 S.E. 2d 895 (1950); Stansbury, North Carolina Evidence, Brandis' Rev., § 155. However, the manager, in his testimony, did not purport to identify the defendant as the man who signed the registration card. Consequently, the admission of the card into evidence was error. *State v. Austin*, 285 N.C. 364, 204 S.E. 2d 675 (1974); *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971). This error does not, however, extend to the admission of the manager's testimony that, after hearing the women describe their assailant, he told the police that the description fit a man staying at the motel. This was a matter within the manager's personal knowledge and, as to this testimony, there was no objection. Again, there was no objection to the testimony of Police Officer Worsham that, as a result of the manager's statement, one of the investigating officers went to the motel office and, thereafter, obtained from the police station the picture of the defendant, which was one of the five pictures constituting the State's Exhibit No. 5.

In view of the positive, in-court identification of the defendant by the two women and the other evidence strongly corroborating their identification of him, the error in the admission of the registration card must be deemed harmless beyond a reasonable doubt. The test of harmless error "is whether there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *State v. Turner*, 268 N.C. 225, 232, 150 S.E. 2d 406 (1966), and cases there cited; *State v. Hunt*, 289 N.C. 403, 222 S.E. 2d 234, *death sentence vacated*, 429 U.S. 807, 97 S.Ct. 44, 50 L.Ed. 2d 69 (1976). In this respect, the present case is easily distinguishable from *State v. Austin, supra.* There the improperly admitted registration card, purporting on its face to show that the defendant and his daughter occupied a motel room together on the night on which she testified the crime of incest was committed at that motel, was, itself, highly prejudicial

evidence tending to show the commission of the crime charged. The defendant's Assignment of Error No. 15, therefore, affords no basis for granting him a new trial.

[6]   The defendant's Assignments of Error Nos. 18 and 19 relate to the admission into evidence, over his objection, of a roll of tape, which the two victims of the assault testified was similar in appearance to that used by their assailant in binding their hands. Strips of tape so used by the assailant were also introduced in evidence. Thus, the jury was in a position to compare the appearance of these strips with the roll and to draw its own conclusion as to whether the strips had been torn from the roll.

Within two hours after the offenses were committed, the defendant was arrested and his car was taken into the custody of the police who, on the next day, released it to his brother. On that day, while the car was at the home of his brother, the defendant's wife, accompanied by her own brother, went to the car and, as she removed therefrom certain clothing and other articles belonging to her, the roll of tape fell out of the car onto the ground. It was immediately observed and picked up by the defendant's brother-in-law. It was he who delivered it to the police and who testified as a witness for the State concerning the circumstances of its finding.

The relevance of the tape to the issue of the identification of the defendant as the assailant of the two women is obvious. The defendant's contention to the contrary has no merit. Likewise, his contention that the admission is evidence of this roll of tape violates G.S. 8-57 has no merit. That statute, after providing that the husband or wife of a defendant in a criminal action is competent to testify as a witness for the defendant, provides, "Nothing herein shall render any spouse competent or compellable to give evidence against the other spouse in any criminal action or proceeding," with exceptions not here material. As the defendant asserts, this statutory prohibition has been extended to testimony concerning declarations made by the husband or wife of the defendant, while not in the presence of the defendant, even though there was no objection interposed to such testimony. *State v. Dillahunt*, 244 N.C. 524, 94 S.E. 2d 479 (1956); *State v. Warren*, 236 N.C. 358, 72 S.E. 2d 763 (1952); *State v. Reid*, 178 N.C. 745, 101 S.E. 104 (1919).

State v. Fulcher

The declaration of the wife in the Dillahunt case would clearly have been incompetent hearsay, apart from G.S. 8-57, and, upon objection, would have been equally inadmissible had the declarant been some person other than the spouse of the defendant. However, neither G.S. 8-57 nor the Hearsay Rule has any application to the testimony of the present defendant's brother-in-law. The defendant's wife did not testify against him and the witness did not testify as to any declaration by the wife. As the defendant says, an act, such as a gesture, can be a declaration within the meaning of this rule, but there was no such act by the wife here. The witness' testimony was with reference to what he, himself, saw fall from the defendant's automobile. The fact that, at the time the witness so observed the tape fall from the defendant's automobile, the defendant's wife was engaged in the independent act of moving articles from the vehicle does not make the discovery of the tape a declaration by the wife or the testimony of this witness concerning it incompetent. There is, therefore, no merit in the defendant's Assignments of Error Nos. 18 and 19.

There was, therefore, no prejudicial error in the trial of the defendant upon the two charges of crime against nature. He has been given a fair trial in accordance with the law of this State upon these charges and, in each case, has been found guilty of a loathsome offense for which he has been given a sentence not exceeding the maximum provided by the statute therefor. The judgments imposed for these offenses will, therefore, not be disturbed.

We now turn to the contention of the defendant that the trial court erred in its failure to dismiss the two charges of kidnapping. In his Assignments of Error Nos. 23 and 24, the defendant contends that the alleged two kidnappings were not "true kidnappings" but were merely acts incidental to the commission of the crimes against nature. Consequently, he contends that, as applied to him in the present case, G.S. 14-39(a)(2) violates both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. If so, the statute would also violate Article I, § 19, of the Constitution of North Carolina.

G.S. 14-39(a), effective 1 July 1975, provides:

"(a) Any person who shall unlawfully confine, restrain *or* remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal guardian of such person, shall be guilty of kidnapping if such confinement, restraint, *or* removal is for the purpose of:

"(1) Holding such other person for ransom or as a hostage or using such other person as a shield *or*

"(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony *or*

"(3) Doing serious bodily harm to or terrorizing the person so confined, restrained *or* removed or any other person." (Emphasis added.)

The defendant's contention is that if the statute be construed to permit his conviction, under the circumstances of this case, both for crime against nature and for kidnapping, the statute violates the Fourteenth Amendment to the Constitution of the United States. He contends the statute, so construed, permits the District Attorney, in his unbridled discretion, to "stack" against one offender charges for the crime of kidnapping and for the crime to facilitate which the alleged kidnapping was committed, while electing to prosecute another offender, under identical circumstances, for but one of the said crimes. In this way, he contends, the State is authorized by the statute, so construed, to increase arbitrarily the penalty for the felony to facilitate the commission of which the alleged kidnapping was done. Such authority, if it exists, gives the District Attorney added leverage in the plea bargaining process, so as to bring about a plea of guilty to the charge of the felony to facilitate which the alleged kidnapping was committed. The defendant contends he has been prosecuted in the present case for kidnapping solely for the purpose of permitting the imposition upon him of a sentence in excess of the maximum provided by the statute for the offense of crime against nature, which, he says, is the real offense committed.

The Court of Appeals, in a thorough, well documented and carefully written opinion, said:

State v. Fulcher

"Thus, it is obvious that a literal interpretation of the new kidnapping statute [G.S. 14-39] would create two crimes instead of one, with resulting unfairness and the potential for abusive prosecutions. And this in turn would call into question the constitutionality of the statute under the due process clause. The prosecutorial application of the same could violate the equal protection clause of the Federal Constitution. These problems can be avoided only by a broader judicial construction of the statute which provides basic guidelines for prosecutions thereunder by highlighting the difference between incidental and primary kidnapping by dealing directly with the qualitative risk to which the victim is exposed.

\* \* \*

"We conclude that a fitting judicial definition must demand consideration of whether the unlawful restraint or confinement was substantial in terms of duration and not merely incidental to the commission of another crime. The asportation element similarly requires a consideration of substantiality in terms of distance and again not merely incidental to another crime.

\* \* \*

"If the charge against the defendant is kidnapping by *unlawful confinement*, the trial judge in instructing the jury must define the term in substance as meaning confinement for a substantial period and not merely incidental to the commission of another crime.

\* \* \*

"If the charge against the defendant is kidnapping by *unlawful restraint*, the trial judge in instructing the jury must define the term in substance as meaning restraint for a substantial period and not merely incidental to the commission of another crime.

\* \* \*

"If the charge against the defendant is kidnapping by *moving from one place to another*, the trial judge in instruct-

ing the jury must define the term in substance as meaning movement from one place for a substantial distance and not merely incidental to the commission of another crime. ***"

[7] It is well settled that if a statute is reasonably susceptible of two constructions, one of which will raise a serious question as to its constitutionality and the other will avoid such question, the courts should construe the statute so as to avoid the constitutional question. *Lynch v. Overholser*, 369 U.S. 705, 711, 82 S.Ct. 1063, 8 L.Ed. 2d 211, 215 (1962); *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, 1361 (1936); *In re Arthur*, 291 N.C. 640, 231 S.E. 2d 614 (1977); *In re Dairy Farms*, 289 N.C. 456, 223 S.E. 2d 323 (1976); *Milk Commission v. Food Stores*, 270 N.C. 323, 331, 154 S.E. 2d 548 (1967); *State v. Barber*, 180 N.C. 711, 104 S.E. 760 (1920); *Re Keenan*, 310 Mass. 166, 37 N.E. 2d 516, 137 A.L.R. 766 (1941); 16 Am. Jur. 2d, Constitutional Law, § 146; 16 C.J.S., Constitutional Law, § 98(b). The Court of Appeals relied upon this principle in reaching its above quoted construction of G.S. 14-39(a); that is, the statutory offense of kidnapping is not committed unless the defendant confined or restrained the alleged victim for a substantial period of time or moved the victim a substantial distance. We must, therefore, determine whether G.S. 14-39(a) is reasonably susceptible of such construction.

[8] The cardinal principle of statutory construction is that the intent of the Legislature is controlling. *In re Arthur, supra; Quick v. Insurance Co.*, 287 N.C. 47, 56, 213 S.E. 2d 563 (1975); *In re Beatty*, 286 N.C. 226, 229, 210 S.E. 2d 193 (1974); *In re Appeal of Martin*, 286 N.C. 66, 77, 209 S.E. 2d 766 (1974); *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E. 2d 281 (1972). We are not at liberty to give to a statute a construction at variance with such intent, even though such construction appears to us to make the statute more desirable and to free it from constitutional difficulties. *See: State v. Camp*, 286 N.C. 148, 151, 209 S.E. 2d 754 (1974); *Shue v. Scheidt, Commissioner of Motor Vehicles*, 252 N.C. 561, 564, 114 S.E. 2d 237 (1960); 73 Am. Jur. 2d, Statutes, § 197. As an aid in ascertaining the intent of the Legislature, we must take into account the law prior to the enactment of the statute. *See: Milk Commission v. Food Stores, supra*, at p. 332; *State v. Emery*, 224 N.C. 581, 31 S.E. 2d 858 (1944); *State v. Mitchell*, 202 N.C. 439, 445, 163 S.E. 581 (1932).

Prior to the rewriting of G.S. 14-39 by the Session Laws of 1975, Ch. 843, this statute simply made kidnapping a felony punishable by imprisonment for life and did not define or prescribe the elements of the offense. Consequently, its elements were determined in accordance with the common law of this State. *State v. Ingland*, 278 N.C. 42, 50, 178 S.E. 2d 577 (1971); *State v. Lowry* and *State v. Mallory*, 263 N.C. 536, 540, 139 S.E. 2d 870 (1965).

In *State v. Ingland, supra,* speaking through Justice Huskins, this Court held that "in order to constitute kidnapping there must be not only an unlawful detention by force or fraud but also a carrying away of the victim," the distance the victim is so carried away being immaterial. In *State v. Lowry* and *State v. Mallory, supra,* we had previously held, likewise, that any carrying away of the victim is sufficient and the distance of such asportation is immaterial. This rule we affirmed in *State v. Hudson*, 281 N.C. 100, 104, 187 S.E. 2d 756 (1972), where we also reaffirmed our previous determinations that "in the kidnapping of a person the law considers the use of fraud as synonymous with force" and "threats and intimidation are equivalent to the actual use of force or violence." *See: State v. Gough*, 257 N.C. 348, 126 S.E. 2d 118 (1962); *State v. Bruce*, 268 N.C. 174, 150 S.E. 2d 216 (1966).

In *State v. Dix*, 282 N.C. 490, 502, 193 S.E. 2d 897 (1973), speaking through Justice Sharp, now Chief Justice, we noted that in each of the above cases (*State v. Ingland, State v. Lowry* and *Mallory,* and *State v. Hudson*) the asportations of the victims by the defendants were substantial, so that there was no necessity in those cases for us to establish the rule that the distance of the victim's removal from his original location was immaterial, and we rejected such rule, saying, "The 62-foot asportation [from one place to another in the same building] was purely incidental to defendant's assault upon the jailer and the rescue or jail delivery which he accomplished," and we held the asportation insufficient to support a conviction of kidnapping, Justices Huskins and Higgins dissenting.

In *State v. Roberts*, 286 N.C. 265, 277, 210 S.E. 2d 396 (1974), speaking through Chief Justice Bobbitt, we set aside a conviction for kidnapping where the defendant had pulled a child a distance of 80 to 90 feet (apparently for the purpose of committing a sex-

ual assault upon her) and said: "Here the entire incident occurred during the seconds it took defendant to pull Kathy a distance of 80 to 90 feet. *** To constitute the crime of kidnapping the defendant (1) must have falsely imprisoned his victim by acquiring complete dominion and control over him for some appreciable period of time, and (2) must have carried him beyond the immediate vicinity of the place of such false imprisonment. We hold the evidence, when considered in the light most favorable to the State, insufficient to establish either the false imprisonment or the carrying away element of the felony of kidnapping." Justices Huskins and Higgins again dissented.

The present statutory definition of the crime of kidnapping, enacted in 1975, must be construed in the light of these then recent decisions of this Court. When so considered, it is clear that the Legislature intended to change the law as therein declared.

[9] That is, the Legislature rejected our decision in *State v. Ingland, supra*, to the effect that there must be both detention and asportation of the victim, the statute plainly stating that confinement, restraint *or* removal of the victim for any one of the three specified purposes is sufficient to constitute the offense of kidnapping. Thus, no asportation whatever is now required where there is the requisite confinement or restraint.

It is equally clear that the Legislature rejected our determinations in *State v. Dix, supra,* and in *State v. Roberts, supra,* to the effect that, where the State relies upon asportation of the victim to establish a kidnapping, the asportation must be for a substantial distance and where the State relies upon "dominion and control," i.e., "confinement" or "restraint," such must continue "for some appreciable period of time." Thus, it was clearly the intent of the Legislature to make resort to a tape measure or a stop watch unnecessary in determining whether the crime of kidnapping has been committed.

It follows that the Court of Appeals erred in its holding that "substantiality" in terms of distance or time is an essential of kidnapping and in its pronouncements that the trial judge must instruct the jury that "confinement" or "restraint," as used in this statute, means confinement or restraint "for a substantial period" and that "removal," as used in this statute, requires a movement "for a substantial distance." We, therefore, cannot approve the in-

structions to juries proposed by the Court of Appeals upon these points.

We find nothing in G.S. 14-39, as now written, which indicates any legislative intent to change our holding in *State v. Hudson*, supra, to the effect that the use of fraud, threats or intimidation is equivalent to the use of force or violence so far as a charge of kidnapping is concerned.

[10] As used in G.S. 14-39, the term "confine" connotes some form of imprisonment within a given area, such as a room, a house or a vehicle. The term "restrain," while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement. Thus, one who is physically seized and held, or whose hands or feet are bound, or who, by the threatened use of a deadly weapon, is restricted in his freedom of motion, is restrained within the meaning of this statute. Such restraint, however, is not kidnapping unless it is (1) unlawful (i.e., without legal right), (2) without the consent of the person restrained (or of his parent or guardian if he be under 16 years of age), and (3) for one of the purposes specifically enumerated in the statute. One of those purposes is the facilitation of the commission of a felony.

[11] It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

On the other hand, it is well established that two or more criminal offenses may grow out of the same course of action, as where one offense is committed with the intent thereafter to commit the other and is actually followed by the commission of the other (*e.g.*, a breaking and entering, with intent to commit larceny, which is followed by the actual commission of such

larceny). In such a case, the perpetrator may be convicted of and punished for both crimes. Thus, there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony. Such independent and separate restraint need not be, itself, substantial in time, under G.S. 14-39 as now written. Let us suppose, for example, a restraint for the purpose of committing rape followed by a rescue of the victim before the contemplated rape is accomplished. Such a restraint would constitute kidnapping under G.S. 14-39. We need not presently determine whether the perpetrator thereof could also be convicted of and punished for assault with intent to commit rape.

[12] We turn now to the application of these principles to the facts as disclosed by the record in the present case. The evidence for the State is clearly sufficient to support a finding by the jury that the defendant bound the hands of each of the two women, procuring their submission thereto by his threat to use a deadly weapon to inflict serious injury upon them, thus restraining each woman within the meaning of G.S. 14-39, and that his purpose in so doing was to facilitate the commission of the felony of crime against nature. This having been done, the crime of kidnapping was complete, irrespective of whether the then contemplated crime against nature ever occurred.

The restraint of each of the women was separate and apart from, and not an inherent incident of, the commission upon her of the crime against nature, though closely related thereto in time. Each woman was so bound, and thereby restrained, so as to reduce her ability to resist, so as to prevent her escape from the room during the commission of the crime against nature upon the other, and so as to prevent her from going to the assistance of her companion. Thus, the restraint of each was for the purpose of facilitating the commission of the felony of crime against nature. It was also for the purpose of facilitating the flight of the defendant from the room after the perpetration of the two crimes against nature. Either such purpose satisfies the statutory definition of kidnapping.

There is, therefore, no violation of the constitutional provision against double jeopardy in the conviction and punishment of the defendant for the two crimes against nature and also for the two crimes of kidnapping.

G.S. 14-39, as herein construed, is not vague. The conduct which it forbids is clearly set forth in the statute. The punishment prescribed is severe but is not cruel or unusual in the constitutional sense. *State v. Cameron*, 284 N.C. 165, 200 S.E. 2d 186 (1973), *cert. den.*, 418 U.S. 905; *State v. Carter*, 269 N.C. 697, 153 S.E. 2d 388 (1967); *State v. Davis*, 267 N.C. 126, 147 S.E. 2d 570 (1966). Consequently, the statute, on its face, does not violate the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, or the Law of the Land Clause of Article I, § 19, of the Constitution of North Carolina, or the Cruel or Unusual Punishment Clause of either Constitution. The statute applies to all who violate it without exception or classification. Consequently, it does not, upon its face, violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States or the like clause contained in Article I, § 19, of the Constitution of North Carolina.

It is only when this statute is applied to a particular defendant in conjunction with another law punishing another crime that the constitutional problem of double punishment may arise. As above noted, neither the Fourteenth Amendment to the Constitution of the United States nor Article I, § 19, of the Constitution of North Carolina forbids the prosecution and punishment of a defendant for two separate, distinct crimes, even though the second offense follows the first in quick succession and was the purpose for which the first offense was committed, as in the case of larceny or rape following a burglary. No violation of either the Federal or the State Equal Protection Clause is necessarily shown by the circumstance that, as to some defendants, the sentences for such successive crimes are made to run consecutively while as to other defendants, convicted of the same successive crimes, the sentences are made to run concurrently, or the circumstance that one is prosecuted for both crimes while the other is prosecuted for but one. These are matters left to the sound discretion of the prosecuting attorney and of the trial court.

In any event, a defendant whose sentences are made to run concurrently is not in a position to raise this constitutional issue.

The present defendant is, for this reason, in no position to raise that question. His two offenses of kidnapping were consolidated for judgment and for these crimes he was given a sentence well within the maximum which might have been imposed for one such offense. For each of the two crimes against nature of which he has been properly convicted, the defendant was given the maximum sentence provided by statute for such offense and these two sentences were made to run consecutively. However, these two sentences were made to run concurrently with the longer sentence for kidnapping. Thus, the total term of imprisonment to which this defendant has been sentenced for the four crimes is actually less than might lawfully have been imposed upon him for only one of the kidnapping offenses.

This defendant has not been tried or punished twice for the same offense. He has not been coerced into a plea bargaining arrangement through the threat of prosecution on multiple charges, for this defendant did not plead guilty to anything.

Nothing herein should be construed as an indication that this Court cannot or will not give relief to a defendant where, through vindictive prosecutorial abuse, criminal charges, arising out of the same course of conduct, have been arbitrarily stacked like pancakes, one upon another, with the result that the total punishment imposed is so disproportionate to his offenses as to violate that fundamental concept of fairness which is the basis of due process of law. Suffice it to say that we find no such abuse in the present case.

In the application of a statute to specific cases, criminal or civil, it is the function of courts to carry out the intent of the Legislature, not to nullify it, except where the statute, so applied, would conflict with the superior voice of the Constitution. While it is not our function to advise the Legislature, we deem it not inappropriate to call to its attention serious questions of constitutionality and practicality which are brought to our notice in our performance of our own function.

In a carefully written, analytical discussion of G.S. 14-39, it has been said: "Kidnapping as now defined overlaps other crimes for which the prescribed punishment is less severe. This creates a very real potential for prosecutorial abuse of discretion by allowing imposition of a more severe punishment in circumstances

which do not warrant it." Slaughter, "Kidnapping in North Carolina—A Statutory Definition for the Offense," 12 Wake Forest Law Rev., 434.

It may well be that the Legislature, upon further consideration, may wish to amend G.S. 14-39 so as to restore to the definition of the crime of kidnapping so much of the rule of *State v. Ingland,* supra, as made asportation of the victim an essential element of the offense, leaving confinement or restraint, for the prescribed purpose, without asportation punishable as false imprisonment, but not as kidnapping. It may also wish to consider the advisability of clearly defining "remove from one place to another" so as to require more than a minor asportation, such as is sufficient for larceny at common law. That is, the Legislature may deem it advisable so to word the statute that an assailant who, with knife or gun, forces his victim from the living room of her home into the bedroom where he rapes her, or forces a merchant from the public part of his store into his office and there compels him to open his safe, will not be punishable for kidnapping in addition to the offense of rape or the offense of armed robbery.

In the present case, the defendant, in a fair and lawful trial, has been convicted of a revolting sexual offense for which the Legislature has decreed that the maximum punishment is a sentence to imprisonment for 10 years. In such case, there is the possibility of use of the kidnapping statute as a device by which to procure a sentence deemed more appropriate for the commission of the crime to facilitate which the defendant committed a confinement, restraint or removal within the literal limits of G.S. 14-39.

It is, however, for the Legislature, not this Court, to determine the advisability of such a change in the law as now declared in G.S. 14-39. So long as the law remains as there declared, it will be the duty and purpose of this Court so to apply it, subject to the above mentioned application of the Law of the Land Clause if and when appropriate.

No error.