STATE OF NORTH CAROLINA v. EDWARD ALSTON

No. 8214SC496

(Filed 5 April 1983)

1. Kidnapping § 1.2— sufficiency of evidence

There was sufficient evidence of a restraint or asportation for the purpose of facilitating the commission of the felony of rape to support conviction of defendant for kidnapping where the evidence tended to show that defendant blocked the victim's path as she approached a school; he held her arm tightly and told her she was going with him; when she protested, he pulled her to the

---

parking lot some distance away and then released her arm when she offered to walk with him; the victim did not resist or attempt to leave because she was afraid of defendant; at one point, defendant told the victim he was going to "fix her face"; when the victim told defendant that their relationship was over, he told her that he had a right to make love to her; and the two walked together to the house of a friend of the defendant where defendant engaged in sexual intercourse with the victim without her consent. G.S. 14-39(a)(2).

**2. Rape and Allied Offenses § 5— second degree rape—sufficiency of evidence of force**

There was sufficient evidence of force or threatened force and lack of consent by the victim to support conviction of defendant for second degree rape where the evidence tended to show that defendant and the victim had lived together at various times; defendant had struck the victim several times; defendant had again struck the victim while they were arguing about money he wanted from her, and the victim had moved in with her mother; a few weeks thereafter, defendant blocked the victim's path as she approached a school; he held her arm tightly and told her she was going with him; when she protested, he pulled her to the parking lot some distance away and then released her arm when she offered to walk with him; the victim did not resist or attempt to leave because she was afraid of defendant; at one point, defendant told the victim that he was going to "fix her face"; when the victim told defendant that their relationship was over, defendant told her that he had the right to make love to her; the two walked together to the house of a friend of defendant; defendant asked the victim if she was ready to go to bed, and she told him that she was not going to bed with him, but he lifted her up from a chair and began kissing and undressing her; the victim did not help or encourage defendant, but neither did she forcibly resist; and once the victim was undressed, defendant told her to lie on the bed and then had sexual intercourse with her.

Judge BECTON dissenting in part and concurring in part.

APPEAL by defendant from *Brannon, Judge.* Judgment entered 12 January 1982 in Superior Court, DURHAM County. Heard in the Court of Appeals 16 November 1982.

Defendant was tried on charges of kidnapping and second degree rape. The State's evidence tended to show the following: Defendant and the prosecuting witness, Cottie Brown, were at one time boyfriend and girl friend. Their relationship began around November 1980. During the months that followed, the two lived together part of the time. However, their relationship began to deteriorate. Defendant began demanding money from Ms. Brown and struck her several times when she refused to do what he wanted her to do. When defendant became angry with Ms. Brown, she would on occasion stay at her mother's house until he asked her to return to her apartment.

In May 1981 the defendant struck Ms. Brown while they were arguing about money he wanted from her. Ms. Brown moved in with her mother. She intended to stay with her mother until defendant stopped going to her apartment. After Ms. Brown moved out, defendant visited her at the technical school she was attending and talked with her about their relationship. He asked her to begin seeing him again, but she refused.

Although they had previously had occasional sexual relations while living together, she refused to do so after moving in with her mother. On 14 June 1981, Ms. Brown moved her furniture and belongings from the apartment. Defendant called her that evening at her mother's house and asked for her new address, but she did not give it to him.

The next day, defendant went to the technical school and waited for Ms. Brown. When Ms. Brown arrived, defendant approached her, blocked her path, and asked where she had moved. When she refused to tell him, he took her arm and held it tightly, telling her that she was going with him. He pulled her to the school parking lot and then released her arm when she offered to walk with him. They continued to walk together through the parking lot. Ms. Brown did not resist or attempt to leave because she was afraid of the defendant. While they walked, defendant talked to Ms. Brown about their problems. At one point, he told her he was going to "fix your face . . . so your family can see." They continued to walk further, with defendant repeatedly asking Ms. Brown for her new address. She would not tell him at first, but finally she said, "If I tell you where I moved to, would you let me go." Defendant responded, "[I]s it over between us," to which Ms. Brown said "yes." Then the defendant said, "Well, since everybody else can see you and I can't see you, then I have the right to make love to you." The two continued walking down Bacon Street towards the house of a friend of the defendant.

Although Ms. Brown saw a group of men on the street, she did not attempt to ask them for help because she recognized most of them as being defendant's friends. They went to defendant's friend's house. When they arrived at the defendant's friend's house, the defendant told Ms. Brown to sit in a chair by the door, which she did. He and his friend went into the back of the house. Defendant returned to the room and began trying to fix a fan. Ms.

State v. Alston

Brown did not try to leave the house, and when questioned about this at trial, she testified, "Well, it was nowhere to go. I don't know—I just didn't."

Defendant's friend left the room and the defendant and Ms. Brown argued briefly. The defendant then asked her if she was ready to go to bed. She told him that she was not going to bed with him, but he lifted her up from the chair and began kissing and undressing her. Ms. Brown did not help or encourage the defendant, but neither did she forcibly resist. Once Ms. Brown was undressed, defendant told her to lie down on the bed, which she did. He then had sexual intercourse with her. Afterwards, Ms. Brown asked the defendant if he would let her up. He said he would if she told him her new address, so she told him. The two of them then walked to defendant's mother's house and spent a short time talking to his mother. They then walked to the bus stop where Ms. Brown boarded a bus and went home. She reported the incident to the police that day.

Defendant continued to call Ms. Brown after this incident, but she refused to see him. Sometime later, defendant called her one evening and asked to see her. When she refused, he told her he had a gun and threatened to kick down the door. He left the telephone off the hook so that she could not call out on her telephone and came to her apartment. When he reached her apartment, she let him in because she was afraid he might break down the door. He forced her to have sex with him, but she did not report this incident to the authorities. Defendant continued to call Ms. Brown and try to see her. Finally, on one occasion when he came to her apartment, she obtained a warrant against him for trespassing.

Defendant moved to dismiss the charges against him at the end of the State's evidence. The motion was denied.

Defendant presented no evidence.

The jury found defendant guilty of kidnapping and second degree rape. Defendant appealed from the imposition of active sentences for both offenses.

*Attorney General Edmisten, by Assistant Attorney General Lucien Capone, III, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Nora B. Henry, for defendant appellant.*

WEBB, Judge.

[1] Defendant assigns error to the denial of his motion to dismiss the charge of kidnapping. G.S. 14-39 provides in part:

> "(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
>     . . . .
>
>         (2) Facilitating the commission of any felony . . . ."

The defendant argues there was insufficient evidence to support a conviction of kidnapping. The unlawful restraint or asportation of a person against that person's will for the purpose of committing a felony is kidnapping if the restraint or asportation is not an inherent feature of such other felony. *State v. Fulcher,* 294 N.C. 503, 243 S.E. 2d 338 (1978). The defendant argues that in this case, there was not sufficient evidence of a restraint or asportation and if there were, there was not sufficient evidence that it was done to facilitate the commission of a felony.

We believe that the evidence that the defendant blocked Ms. Brown's path as she approached the school; that he held her arm tightly and told her she was going with him; that when she protested, he pulled her to the parking lot some distance away; and that he threatened to "fix her face" was evidence from which the jury could find that he restrained and carried her away against her will. We believe that in light of what happened after the defendant and Ms. Brown arrived at the home of defendant's friend, there was sufficient evidence for the jury to find the restraint and asportation were for the purpose of raping Ms. Brown. Even if he did not form the intent to rape her until she told him their relationship was finished, we believe the evidence was sufficient for the jury to find that there was a restraint and

asportation for the purpose of committing a felony. There was evidence that she continued to accompany him through fear and not of her own free will. The defendant's first assignment of error is overruled.

[2] In his second assignment of error the defendant contends there was not sufficient evidence that the sexual intercourse was by force and against the will of Ms. Brown for the jury to find him guilty of rape. "Rape is the carnal knowledge of a female person by force and against her will . . . . The force necessary to constitute rape need not be actual physical force. Fear, fright or coercion may take the place of force . . . . While consent by the female is a complete defense, consent which is induced by fear of violence is void and is no legal consent." *State v. Primes,* 275 N.C. 61, 67, 165 S.E. 2d 225, 229 (1968) (Citations omitted). We believe that the evidence as to the past relationship between Ms. Brown and the defendant in which he had been brutal to her at times, coupled with his action on 15 June 1981 when he twisted her arm, told her he would "fix her face," and did not release his grip on her arm until she agreed to walk with him is evidence from which the jury could find the defendant used force or a threat of force to have intercourse with Ms. Brown and any consent on her part was induced by fear of violence. We hold there was sufficient evidence of force or threatened force and lack of consent by Ms. Brown for the jury to find the defendant guilty of rape.

The defendant relies on *State v. Ricks,* 34 N.C. App. 734, 239 S.E. 2d 602 (1978). In that case the defendant was convicted of raping the 12-year-old daughter of the woman with whom he lived. The 12-year-old girl testified that the defendant had spanked the children in the house when they did not obey him. On the date in question, he offered her $2.00 if she would have intercourse with him. She refused but followed him to a pond near her house. He asked her to take off her panties and lie down, which she did. The defendant had intercourse with the child but stopped when she asked him to do so. In holding the evidence was not sufficient to support a conviction of rape, this Court emphasized that the child followed the defendant away from her house without any compulsion to do so. She did as the defendant told her but there was no force or threatened force to require her to do so. She was in shouting distance of her house and if she had called out, her mother could have come to her aid. Those factors are not

present in this case. There was evidence that Ms. Brown did not voluntarily accompany the defendant. She was in a position where she would receive no aid had she protested in the defendant's friend's house. The jury could have found that resistance on her part would be futile. We believe *Ricks* is distinguishable from this case. The defendant's second assignment of error is overruled.

No error.

Judge HEDRICK concurs.

Judge BECTON dissents in part and concurs in part.

Judge BECTON dissenting in part and concurring in part.

The facts surrounding the sexual intercourse on 15 June 1981 that caused Ms. Brown to charge defendant with rape were (a) not unlike the facts surrounding prior acts of sexual intercourse between the parties[1] and (b) not as egregious as facts surrounding a subsequent act of sexual intercourse between the parties.[2] From defendant's perspective, then, Ms. Brown was engaging in sex on 15 June 1981 to accommodate him just as she had done in the past. On the rape charge, however, defendant's perception is not controlling. We must look at Ms. Brown's state of mind to see if the sex act was without her consent and against her will. Ms.

---

1. Prior to 15 June 1981, but both before and after Ms. Brown and defendant started living together, they had sexual intercourse with each other. On those occasions when the defendant wanted to have sex but Ms. Brown did not, Ms. Brown would stand still and defendant would undress her and have sex with her. Sometimes they would have sex during her menstrual cycle. Sometimes defendant would get forceful and strike her while engaging in sexual intercourse. Sometimes Ms. Brown had sex with defendant just to accommodate him; sometimes she enjoyed their sexual relationship.

2. After 15 June 1981—indeed, after defendant had been arrested on the rape and kidnap charges in the case *sub judice*—defendant called Ms. Brown from a telephone booth and told her that he had a gun and wanted to come to her house and that he would break the door down and not be responsible for his actions if she did not let him in. When Ms. Brown told defendant she didn't want him to come to her house, defendant "dropped the phone" preventing Ms. Brown from getting a dial tone and ran to Ms. Brown's house. Ms. Brown "was so scared that he was going to kick the door down that [she] opened the door," and defendant engaged in sex with her against her will.

Brown testified that she was afraid and that she had told the defendant that she did not want to have sex with him. Thus, there is evidence from which the jury could find that her submission was without her consent and against her will. I, therefore, concur in the majority's resolution of the rape charge.

I cannot concur with the majority's resolution of the kidnapping charge, however. On the kidnapping charge, it is defendant's perception—his intent, his state of mind—that is controlling. Although there may have been some evidence suggesting that the defendant restrained or confined Ms. Brown, I find no evidence from which the jury could conclude that defendant restrained or confined her "for the purpose of raping Ms. Brown." Ante p. 5. There is no evidence that the defendant, at the time he approached, restrained or confined Ms. Brown, intended at that time to rape her. I, therefore, disagree with the majority's statement "that in the light of what happened after the defendant and Ms. Brown arrived at the home of the defendant's friend, there was evidence sufficient for the jury to find the restraint and asportation were for the purpose of raping Ms. Brown." Ante p. 5.

The evidence shows that defendant wanted to get Ms. Brown alone so he could talk to her about their relationship. Sex was not mentioned as they talked while walking several blocks. Only when Ms. Brown told defendant it was over between them did defendant say that he "thought she owed him one more time of making love." The record shows that at that point Ms. Brown and the defendant turned around, walked back to the street they had earlier travelled, and went to defendant's friend's house. Ms. Brown walked unassisted and defendant made no threats to her. Simply put, the evidence, in my view, was not sufficient for the jury to find that there was a restraint and asportation for the purpose of committing a felony. I vote, therefore, to reverse the kidnapping charge.