STATE OF NORTH CAROLINA v. McKINLEY WILLIAMS

No. 23

(Filed 2 March 1976)

1. **Homicide § 20— photograph of deceased — clothing — admissibility for illustration**

   The trial court in a first degree murder prosecution did not err in allowing into evidence a photograph of deceased and clothing worn by deceased at the time of the homicide, though defendant did not contest the cause of death, since such evidence was admissible for the purpose of illustrating the testimony of a doctor who testified concerning the circumstances of death.

2. **Criminal Law § 76— no intoxication of defendant — voluntariness of confession**

   Evidence was sufficient to support the trial court's findings that defendant was not intoxicated at the time he made a confession, he had sufficient mental capacity to understand what he was saying, *Miranda* rights were read to defendant, he understood them, and thereafter signed a waiver of attorney, and defendant voluntarily and understandingly made a statement to officers.

3. **Criminal Law § 113— effect of intoxication on weight given to confession — request for instruction required**

   Instructions to the jury to consider the extent of defendant's intoxication upon the weight to be accorded his statements made to the investigating officers concerned a subordinate feature of the case, and the trial court was not required to instruct the jury thereon in the absence of a special request.

4. **Constitutional Law § 36; Homicide § 31— first degree murder — death sentence constitutional**

   Imposition of the death penalty upon a conviction of first degree murder was constitutional.

APPEAL by defendant from *Cowper, J.,* at the 4 August 1975 Session of HALIFAX County Superior Court.

Upon an indictment, proper in form, the defendant was convicted of murder in the first degree in the death of George Herbert Johnson, II, on 23 January 1975 and sentenced to death.

The State's evidence tended to show the following:

On Thursday, 23 January 1975, between the hours 5:30 and 6:15 p.m., the son of the deceased went to his father's office at the Scotland Neck Tractor Company and found his father dead, slumped in a chair behind his desk.

Dr. Sutton, who examined the decedent, determined that there was a hole two inches in diameter just below the collarbone and that this hole was caused by a shotgun wound which severed the windpipe as well as the blood vessels leading to the heart.

Andrew Smith, a friend of the defendant, had seen the defendant about 5:15 p.m. at the driveway leading from the Scotland Neck Tractor Company. The defendant asked Smith for money to purchase liquor, but Smith refused. About thirty minutes later, Smith saw the defendant again, and he said that Johnson had mistreated him and he was going to Johnson's office to shoot him. Some 20 minutes later the defendant told Smith that he had killed Johnson.

The defendant returned to his home, and Smith followed him there. The defendant continued to say that he had killed Johnson, but Smith did not believe him, whereupon the defendant told Smith that if he did not believe him to go to his car and he would find the shotgun and an empty shell. This was done, and the shell was retrieved. According to Smith, the defendant was drinking but was not staggering and talked with good sense.

The defendant was apprehended about 8 p.m. at his home. The deputy sheriff asked the defendant to step out of the house so he could talk to him. The defendant replied, "to hell there ain't nothing to talk about. I done it." At that time the officer attempted to read his rights to him. The defendant continued to talk about the killing and said that "he was glad he had shot Mr. Johnson and that if he had to, he would do it again." This officer indicated that he did not appear to have been drinking and he smelled nothing on his breath.

About 9:30 p.m., the defendant was advised of his rights by E. C. Warren, Chief Investigator for the Halifax County Sheriff's Department. This officer did not think the defendant was under the influence of any intoxicants. The officer transcribed a confession by the defendant, and he signed it. The trial judge conducted a voir dire examination with regard to testimony as to this purported confession and received into evidence the officer's statements as to this confession. Defendant's confession indicated that he went to see Mr. Johnson to obtain a fifty dollar loan and that he had some difficulties with his employer (the deceased) during the week, apparently stemming

from drinking on the job. He admitted that he became angry when Mr. Johnson refused the loan and that he shot him.

The defendant's evidence tended to show that he had been drinking to some extent the entire week. Further, he had not worked on Monday or Tuesday, and when he went to work on Wednesday, his employer directed someone to take him home. He was apparently laid off or fired. A separation notice was mailed to defendant on the day of the killing stating that the "cause of separation is that McKinley Williams reported to work on Wednesday, January 22nd drunk after missing Monday and Tuesday." The defendant explained the presence of the shotgun in the car by stating that he had been hunting on that day. The defendant testified that he went to see Mr. Johnson to obtain lay off papers. He did not recall going back to his car for the gun but remembered that Mr. Johnson got angry and a gun went off. He never intended to kill Mr. Johnson. In addition, he denied many of the incriminating statements he had made to the Deputy Sheriff of Halifax County shortly after the killing.

Other facts necessary. to the decision will be set out in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General George W. Boylan and Associate Attorney William H. Boone for the State.*

*W. Lunsford Crew for defendant appellant.*

COPELAND, Justice.

The defendant raises several questions for our consideration.

[1]  1. Did the court err in admitting into evidence a photograph of the deceased, as well as some articles of clothing worn at the time of the homicide?

The defendant contends that he did not contest the cause of death and did not deny that he pulled the trigger of the shotgun. He argues that since he did not controvert the killing, then the photographs and clothing were admitted only to inflame and prejudice the jurors.

Despite defendant's contention, the burden was still on the State to prove its case beyond a reasonable doubt so as to con-

vince the jury that there had been an unlawful killing with malice and that the circumstances of the killing justified a finding of premeditation, deliberation and a specific intent to kill. With regard to this photograph, the examining physician had testified that he had seen the body of Mr. Johnson at the desk and that this photograph accurately portrayed the desk, the office, and the body of the deceased as the doctor had seen them. Upon objection the trial judge admitted the photographs for the purpose of illustrating the testimony of the doctor. A photograph is admissible for the purpose indicated. *State v. Young,* 287 N.C. 377, 214 S.E. 2d 763 (1975) ; *State v. Crowder,* 285 N.C. 42, 203 S.E. 2d 38 (1974). Because a photograph depicts a gruesome scene does not render it incompetent. *State v. Crowder, supra; State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969) ; *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967). The defendant did not submit the contested photograph for examination by our Court. It is interesting to note that the able trial judge later in the trial sustained defendant's objection to the introduction of a photograph that showed the shotgun wound in more detail. The court held that this photograph was "unduly inflammatory." It can only be concluded that the contested photograph was not unduly inflammatory.

With regard to the clothing offered into evidence, our Courts have held that it is admissible if its appearance throws any light on the circumstances of the crime. 1 Stansbury's N. C. Evidence, § 118 (Brandis Rev. 1973). *See e.g., State v. Cox,* 280 N.C. 689, 187 S.E. 2d 1 (1972), where the bloodstained clothes of a child rape victim were properly admitted. The clothing of the deceased worn at the time of the homicide was another circumstance showing the manner of the killing. The assignment of error is overruled.

[2] 2. Did the trial court commit error in admitting into evidence the defendant's statement made to the investigating officers?

The defendant contends that his statement was improperly admitted because at the time it was made he was so intoxicated he did not understand its contents or significance and neither could he have appreciated the full nature of his *"Miranda"* rights.

Upon objection having been made, the trial judge properly conducted a *voir dire* hearing and concluded that at the time of the interrogation:

"2. That the defendant was not under the influence of intoxicating liquor.

"3. That the defendant had sufficient mental capacity to understand and apprehend what he was saying.

"4. That the Miranda rights were read to the defendant and he understood them, and he thereafter signed a waiver of attorney in the presence of the officers agreeing to make a statement to the officers.

"5. That the statement made by the defendant to Investigator Warren was given freely with full understanding of his rights and that he was capable of giving a correct account of the matters which he had related to the officers, and after the statement was given it was re-read to the defendant and he expressed agreement with it."

In support of these conclusions the court had before it the evidence of the officer present when the defendant made the statement. The officer testified that the defendant was *not* under the influence of any intoxicating beverage when the statement was made.

Counsel for the defendant travels outside the *voir dire* hearing for evidence that the defendant was intoxicated to some extent before the killing. But counsel for the defendant in his brief is frank to admit that there was "evidence both ways."

Our Court speaking through Justice Sharp (now Chief Justice) has held:

"Unless a defendant's intoxication amounts to mania—that is, unless he is so drunk as to be unconscious of the meaning of his words—his intoxication does not render inadmissible his confession of facts tending to incriminate him. The extent of his intoxication when the confession was made, however, is a relevant circumstance bearing upon its credibility, a question exclusively for the jury's determination." *State v. Logner,* 266 N.C. 238, 243, 145 S.E. 2d 867, 871 (1966).

The trial court's findings upon voir dire are certainly supported by ample and competent evidence, and these must be considered final upon appeal. *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. McClure,* 280 N.C. 288, 185 S.E. 2d 693 (1972). The assignment of error is overruled.

**[3]** 3. Did the trial court err in failing to instruct the jury to consider the extent of defendant's intoxication upon the weight to be accorded his statements made to the investigating officers?

In this case the trial judge had properly instructed the jury that they were the sole judges of the facts, that it was their duty to remember and consider all of the evidence whether it was called to their attention or not, and that they were to determine the credibility of *all the evidence*. (Emphasis supplied.) He instructed the jury, "you may believe all that a witness says, part of what he says, or nothing of what he says and that is entirely a question for you."

The trial judge also properly instructed the jury as to the effects of intoxication on premeditation and deliberation. He charged as follows:

> "If as a result of intoxication, the defendant did not have sufficient intent to kill Mr. Johnson formed after premeditation and deliberation, he is not guilty of first degree murder; therefore, I charge you that if upon considering the evidence with respect to the defendant's intoxication, you have a reasonable doubt as to whether the defendant formulated the specific intent required for a conviction of first-degree murder, you would not return a verdict of guilty of first-degree murder."

Relating the multifarious factors that might affect the weight to be accorded a given piece of evidence, such as defendant's confession, concerns a subordinate feature of the case. *State v. Lester,* 289 N.C. 239, 221 S.E. 2d 268 (1976) ; *State v. Hunt,* 283 N.C. 617, 197 S.E. 2d 513 (1973). "[I]nstructions as to the significance of evidence which do not relate to the elements of the crime itself or defendant's criminal responsibility therefore have been considered subordinate features of the case." *State v. Hunt, supra* at 624, 197 S.E. 2d at 518. Whether a request is made for an instruction on a subordinate feature of the case involves a tactical decision by the defendant. Giving an instruction on a particular subordinate feature of the case may so concentrate attention upon that subject "as to divert attention from unrelated weaknesses in the State's case." *State v. Hunt, supra* at 624, 197 S.E. 2d at 518. "In the absence of a special request the trial judge is not required to instruct the jury on subordinate features of a case." *State v. Lester,*

*supra* at 243, 221 S.E. 2d at 271 (1976). *Accord, State v. Hunt, supra* at 623, 197 S.E. 2d at 517-18. No such special request was made in this instance. The assignment of error is overruled.

**[4]** 4. Did the court err in denying the motion of the defendant to set aside the verdict and judgment for that the death penalty is unconstitutional and unlawful?

Our Court has considered this question on many occasions and found it to be without merit. It would serve no purpose at this time to plow this ground again. *State v. Griffin*, 288 N.C. 437, 219 S.E. 2d 48 (1975) and cases cited therein.

Because of the seriousness of this case, we have carefully examined the entire record. Our examination discloses that the record is free from prejudicial error. In the judgment rendered we find

No error.