STATE OF NORTH CAROLINA v. GEORGE ALEXANDER ADAMS

No. 12

(Filed 1 April 1980)

1. **Rape § 4.2— physical condition of victim —testimony admissible**

    In a prosecution for rape and crime against nature the trial court did not err in permitting the victim to testify concerning her physical condition, since her ailment was not so complicated that only an expert witness could give testimony as to its cause and she had previously given substantially similar testimony without objection by defendant; furthermore, testimony by the physician who treated the victim concerning the permanency of her condition was relevant because it tended to corroborate the victim and prove penetration, an essential element of both rape and sodomy.

2. **Criminal Law § 169— evidence excluded —failure of record to show what evidence would have been**

    In a prosecution for kidnapping, rape and crime against nature, the trial court did not err in refusing to allow the victim to testify whether the intersection near her home was a busy one, though defendant argued that testimony showing that the intersection was a busy one would have been relevant on the question of the victim being restrained against her will, since defendant's questions did not seek answers with respect to traffic at the intersection at the time relevant to this case, and defendant failed to show prejudice where the record did not disclose what the witness's answers would have been.

3. **Criminal Law § 87.3— witness's use of notes to refresh recollection**

    There was no merit to defendant's contention that the trial court erred in permitting a witness to testify from his notes where the court, after defendant's objection, instructed the witness that he could use his notes to refresh his recollection but he could not read them to the jury, and there was nothing in the record to show that the witness did not follow the instructions of the court.

4. **Kidnapping § 1— restraint shown —showing of asportation unnecessary**

    Under G.S. 14-39 no showing of asportation as an element of kidnapping is necessary where confinement or restraint is shown.

5. **Kidnapping § 1.2— three crimes charged —asportation as well as restraint shown**

    Where defendant was charged with kidnapping, rape and crime against nature, the State showed not only a restraint of the victim but also an asportation where the evidence tended to show that the victim was accosted by the defendant on the street near the front of her home; she was intending to go to another person's house, but she unwillingly went to and entered her own home because defendant threatened to blow her brains out; and defendant admitted that he told her she was not "going any place."

**6. Crime Against Nature § 1— constitutionality of statute**

The statute under which defendant was indicted for crime against nature, G.S. 14-177, is constitutional.

**7. Criminal Law § 1— consent—other offenders not prosecuted—no defense**

As a general rule, consent is not a defense to a prosecution for acts which are breaches of the criminal law, nor is it a valid defense to a criminal charge that other persons have not been prosecuted for the same conduct as that which a defendant is alleged to have committed.

APPEAL by defendant from *Hobgood, J.*, May 1979 Session of VANCE Superior Court.

Upon pleas of not guilty defendant was tried on bills of indictment charging him with rape, kidnapping and two counts of crime against nature. Collie R. Bond was the alleged victim of the crimes. Evidence prsented by the state is summarized in pertinent part as follows:

Mrs. Bond was a 62-year-old widow who lived alone in a house on West Rock Spring Street in Henderson, N.C. She was employed as a reading coordinator by the Vance County School System. At other times she had been employed as a reading teacher and a classroom teacher.

At 1:00 p.m. on Sunday, 1 April 1979, Mrs. Bond was returning from church services to the vicinity of her home. She did not intend to go directly to her home, wishing instead to visit a neighbor who lived nearby. As she neared her home, defendant approached her. She was acquainted with defendant as he had done a number of odd jobs for her. Mrs. Bond spoke to defendant and he asked her where she was going. When she told him that she was going to Mrs. Talley's house, defendant told her that she was not, that if she went another step he would blow her "damn brains out", and that she was going into her house with him.

Because of her fear of defendant, Mrs. Bond went into the house with him. He ordered her into a downstairs bedroom and told her to remove her clothing. She tried to talk defendant out of harming her, telling him that she was an old woman and that a young man like him did not want an old woman. Defendant told her that age did not make any difference to him, that he had "experienced" with virgins and with eighty-year-old women and that he had planned this occasion with her for a long time.

After Mrs. Bond eventually removed her clothing, defendant removed his and got on the bed with her. In spite of her continued pleas that he leave her alone, between then and around 5:00 p.m. defendant performed numerous acts of cunnilingus, vaginal intercourse and anal intercourse on the victim. On one occasion he forced Mrs. Bond to perform fellatio on him.

Finally, at around 5:00 p.m., defendant allowed Mrs. Bond to put on a house robe for the purpose of going upstairs to the bathroom. Instead of going upstairs, she went out the front door and to a neighbor's house where police were called. When police entered the Bond home, they found defendant hiding in an upstairs closet.

Mrs. Bond was taken to the hospital where she was admitted as a patient and treated for several days. In describing the Sunday afternoon ordeal, the victim stated that the anal intercourse was "the most painful thing that has ever happened to me."

Defendant offered evidence, including his own testimony, which is summarized in pertinent part as follows:

On the day in question he was 33 years old. He lived on the same street as Mrs. Bond and had known her all of his life. For several months prior to 1 April 1979, defendant had been employed by her to do various types of work in and around her home, including painting and carpentry, brick and yard work. He worked short hours, mostly at night. During the time he worked for Mrs. Bond they had several personal conversations, including talk regarding marriage. He also ate several meals at Mrs. Bond's house and, although he had kissed her on several occasions, he never had sexual relations with her prior to 1 April 1979.

On the afternoon of that date, he saw her walking out of her driveway. He told her she was not going any place and she went with him into her home. During the afternoon she willingly undressed herself, he undressed himself, and they "had oral, vaginal and anal sex. She never said that she did not want to have sex."

Defendant admitted that he had been convicted of transporting tax-paid liquor, two counts of car theft, breaking and entering and fornication.

The jury found defendant guilty of second-degree rape, kidnapping and two counts of crime against nature. The court entered judgments imposing prison sentences as follows: in one case of crime against nature, 10 years; in the other case of crime against nature, 10 years, this sentence to commence at expiration of the first 10-year sentence; in the kidnapping case, 80 years, this sentence to begin at expiration of sentence in the second crime against nature case; and in the rape case, life sentence to begin at expiration of sentence in the kidnapping case.

Defendant appealed from all judgments, and this court allowed motions to bypass the Court of Appeals in the cases in which less than life sentences were imposed.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General Myron C. Banks, for the State.*

*Paul J. Stainback, Kermit W. Ellis, Jr., and Michael E. Satterwhite for defendant-appellant.*

BRITT, Justice.

[1] By his second and fifth assignments of error, defendant contends the trial court erred in permitting Mrs. Bond to give certain testimony regarding her physical condition and in allowing Dr. J. P. Green to testify with respect to the permanency of her condition. These assignments have no merit.

Mrs. Bond testified that she was under the care of Dr. Green the entire time that she was in the hospital; that she was given a proctoscopic examination; that she suffered extended soreness in the area of her hips; and the soreness was caused by the antics defendant put her through, including his placing her legs on one occasion over his shoulder.

Dr. Green testified that he examined Mrs. Bond while she was in the hospital and afterwards; that he found torn places in her vagina and rectum; that several days after she was released from the hospital, she told him that she had developed some loss of rectal control; that he determined that her rectal muscles were damaged to the extent they were not capable of providing tight control of her lower rectum; that he also found a partial prolapse of her vagina; that he had not detected those conditions prior to 1

April 1979; and that any repeated violent penetration of the vagina or rectum could have caused Mrs. Bond's injuries.

Defendant argues that Mrs. Bond was not a competent witness to say what caused soreness to her hips; that the permanency of her injuries had no relevance to the question of defendant's guilt or innocence; and that the only effect of the challenged testimony was to inflame the jury to defendant's prejudice.

We do not find defendant's argument persuasive. As to Mrs. Bond's testimony regarding soreness in the area of her hips and that defendant's acts caused the soreness, we do not think the ailment was so complicated that only an expert witness could give testimony as to its cause. *See generally* 1 Stansbury's North Carolina Evidence § 129 (Brandis Rev. 1973). Furthermore, the victim had previously testified without objection that defendant had bruised her wrists, that his penetration of her rectum was the most painful experience she had ever endured, and that she was very sore in the "private areas" of her body. The admission of testimony over objection is ordinarily harmless when testimony of the same import is theretofore or thereafter admitted without objection. 4 Strong's N.C. Index 3d, Criminal Law § 169.3.

Dr. Green's testimony was relevant because it tended to corroborate the victim and prove penetration, an essential element of both rape and sodomy. *State v. Cross*, 284 N.C. 174, 200 S.E. 2d 27 (1973); *State v. McNeil*, 277 N.C. 162, 176 S.E. 2d 732 (1970), *cert. denied*, 401 U.S. 962 (1971); *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961). Evidence that is relevant will not be excluded merely because it is inflammatory. *See generally State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093 (1977); *State v. Williams*, 289 N.C. 439, 222 S.E. 2d 242, *death sentence vacated* 429 U.S. 809 (1976).

[2] By his third assignment of error defendant contends the trial court erred in refusing to allow Mrs. Bond to testify whether the intersection of Chestnut Street and West Rock Spring Street in the City of Henderson was a busy intersection. Defendant argues that he had shown that the Bond home was only a short distance from Chestnut Street and that testimony showing that the in-

tersection was a busy one would have been relevant on the question of Mrs. Bond being restrained against her will.

There are at least two reasons why this assignment has no merit. In the first place defendant's questions did not seek answers with respect to traffic at the intersection at the time relevant to this case. In the second place, the record does not disclose what the witness' answers would have been, therefore, defendant has failed to show prejudice. *State v. Fletcher*, 279 N.C. 85, 181 S.E. 2d 405 (1971). It is true that defendant's counsel asked to be heard when the court sustained objections to the questions, but there was no request that the witness be allowed to answer "for the record".

[3] There is no merit in defendant's fourth assignment of error by which he contends the trial court erred in permitting the witness Lt. Samuel Pearson to testify from his notes. The record reveals that when the witness began testifying defendant objected to his testifying from notes. The court thereupon overruled the objection but instructed the witness that while he could use notes to refresh his recollection, he could not read them (to the jury). There is nothing in the record to show that the witness did not follow the instructions of the court. We perceive no error. *State v. Peacock*, 236 N.C. 137, 72 S.E. 2d 612 (1952).

We find no merit in defendant's assignments of error wherein he contends the trial court erred in denying his motion for directed verdict in the kidnapping case.

G.S. 14-39 provides, in pertinent part, that "any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of: . . . (2) Facilitating the commission of any felony . . . ; or (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed. . . ."

[4] Defendant recognizes that under G.S. 14-39 as now written, no showing of asportation as an element of kidnapping is necessary where confinement or restraint is shown. However, he argues that when, as in this case, a defendant is charged with kidnapping, rape and sodomy, a restraint, which is an inherent, in-

evitable feature of the other felonies, also of kidnapping, cannot support verdicts of all three crimes. Defendant cites *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978).

In *Fulcher*, this court, in an opinion by Justice Lake, said:

> It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony. 294 at 523.

[5] We adhere to the principle quoted from *Fulcher*. However, in the case at hand the state showed not only a restraint of the victim but that there was an asportation, that she was removed from one place to another without her consent. She testified that she was on the street near the front of her home intending to go to Mrs. Talley's home and that she unwillingly went to and entered her own home because defendant threatened to blow her brains out. Defendant admitted that he told her she was not "going any place".

In *Fulcher* this court pointed out that the present statutory definition of the crime of kidnapping enacted in 1975 changed the law as theretofore declared by this court. *See State v. Dix*, 282 N.C. 490, 193 S.E. 2d 897 (1973); *State v. Roberts*, 286 N.C. 265, 210 S.E. 2d 396 (1974). Again we quote from the opinion in *Fulcher*:

> It is equally clear that the Legislature rejected our determinations in *State v. Dix, supra*, and in *State v. Roberts, supra*, to the effect that, where the State relies upon asportation of the victim to establish a kidnapping, the asportation must be for a substantial distance and where the State relies upon "dominion and control," i.e., "confinement"

of "restraint," such must continue "for some appreciable period of time." Thus, it was clearly the intent of the Legislature to make resort to a tape measure or a stop watch unnecessary in determining whether the crime of kidnapping has been committed. 294 N.C. at 522.

We hold that the showing of asportation in the case at hand was sufficient to support the verdict finding defendant guilty of kidnapping.

By his assignments of error Nos. 7, 8, 10 and 11 defendant contends the trial court erred in denying his motions for directed verdict as to the charges of crime against nature, in failing to allow him to testify concerning Mrs. Bond's consent to the crimes alleged, in failing to instruct the jury that consent is or should be a defense to charges of crime against nature, and in failing to grant his motion for a new trial on the ground that our sodomy statute is unconstitutional. We find no merit in any of these assignments.

[6] The statute under which defendant was indicted for crime against nature, G.S. 14-177, is constitutional. *State v. Enslin*, 25 N.C. App. 662, 214 S.E. 2d 318, *appeal dismissed*, 288 N.C. 245, 217 S.E. 2d 669 (1975), *cert. denied*, 425 U.S. 903 (1976). *See also*, *Doe v. Commonwealth's Attorney for the City of Richmond*, 403 F. Supp. 1199 (E.D. Va. 1975), *affd. mem.* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed. 2d 751 (1976) (upholding the constitutionality of Virginia's crime against nature statute).

We reject defendant's other arguments relating to these assignments. "It is manifest that the legislative intent and purpose of G.S. 14-177 prior to the 1965 amendment and since is to punish persons who undertake by unnatural and indecent methods to gratify a perverted and depraved sexual instinct which is an offense against public decency and morality." Justice (later Chief Justice) Parker in *State v. Stubbs*, 266 N.C. 295, 298, 145 S.E. 2d 899 (1966).

[7] As a general rule, consent is not a defense to a prosecution for acts which are breaches of the criminal law. *Ange v. Woodmen of the World*, 173 N.C. 33, 91 S.E. 586 (1917); *State v. Williams*, 75 N.C. 134 (1876); *Bell v. Hansley*, 48 N.C. 131 (1855). Nor is it a valid defense to a criminal charge that other persons

have not been prosecuted for the same conduct as that which a defendant was alleged to have committed. *Gastonia v. Parrish*, 271 N.C. 527, 157 S.E. 2d 154 (1967).

Finally, defendant's court appointed counsel asks that we examine the record beyond the specific assignments of error he has argued to determine if his client received a fair trial. This we have done and conclude that in defendant's trial and the judgments appealed from, there was

No error.