STATE OF NORTH CAROLINA v. JERRY LEE EASTER

No. 8026SC804

(Filed 17 March 1981)

### Kidnapping § 1.2– sufficiency of evidence

G.S. 14-39(a) authorizes a kidnapping conviction whenever the defendant has committed at least one of the underlying acts of either confinement, restraint, or removal for a proscribed purpose; therefore, defendant could be convicted for kidnapping upon the State's showing that he accompanied the principal during the removal of the victim for the purpose of facilitating the commission of the victim's murder, since the overall circumstances, including defendant's actual presence throughout the entire criminal episode and defendant's handing of guns to the actual perpetrators of the murder, warranted the additional inference that defendant intended to aid and abet the principal by accompanying him.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 21 April 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 27 January 1981.

Defendant was indicted for the kidnapping and murder of Ethell Wilson. The jury returned a verdict of not guilty as to the murder charge but found defendant guilty of kidnapping. The court imposed a maximum prison sentence of fifty years for the kidnapping conviction.

In pertinent part, the State's evidence tended to show the following. In the winter of 1979, Charles Norwood and Ethell "Slim" Wilson entered into a transaction in which Norwood gave Slim some marijuana to sell in Washington, D.C. The terms of the deal were that Slim was to sell the marijuana on commission and pay Norwood later after it was all sold. Slim subsequently travelled to Washington where he sold the contraband for $6,000.00. Slim did not, however, intend to keep his part of the bargain to pay for the marijuana because "Norwood had clipped him in Florida and he was not going to give him any (money)."

On 13 July 1979 at 7:00 a.m., Slim and Norwood met at the home of W. James Pearson at 217 Oregon Street in Charlotte, North Carolina. Slim then left to go to his lawyer's office and said he would be back at 7:00 p.m. Slim was driving his green Cadillac.

State v. Easter

At about 11:00 a.m. the same morning, Norwood went to defendant's home and stayed there for about twenty minutes. Defendant and his brother then got in Norwood's pickup truck. A gun was lying on the seat at the time. Norwood drove them back to Oregon Street where he talked briefly with Ronald Tyree Froneberger. Norwood, with the same party, then drove over to a Kentucky Fried Chicken restaurant located about one mile away. Froneberger drove his own car to the place. Slim was already there.

Norwood and Froneberger talked to Slim in the parking lot. Defendant waited. Norwood and Froneberger got into the Cadillac with Slim. Defendant, along with his brother, then got into a maroon car which belonged to Bobby White. Everyone drove back to Oregon Street.

Slim parked his car on the street while Norwood sat opposite to him with a pistol pointed at his temple. Froneberger also had a gun. Slim cried out for help, but Norwood said "I just want my money. That's all I want is my money." Norwood then fastened handcuffs on Slim, took him out of the car and put him in the trunk. Three or four men were standing at the back of the Cadillac while Slim was being forced into the trunk. Defendant went over by the trunk but did not physically assist Norwood. People from the neighborhood were also standing around watching the incident, and several people, including defendant's brother, were looking on from nearby porches.

After Slim was put in the trunk, defendant got in the car with Norwood. Norwood then drove the car to a secluded spot near a vacant house in a wooded area. Joe Chisholm and Larry Adams followed Norwood in another car. After the cars were parked, defendant stood by while Norwood took the license tag off the Cadillac. Larry Adams testified that the following then occurred:

> Norwood then told Easter to give Chisholm a gun. Then Norwood said to the man in the trunk, "Your time has come," or something like that. .... Then Charles (Norwood) opened the trunk ... and I heard a whole lot of shots.
>
> I saw Norwood and Chisholm holding guns. I can't remember if Easter gave a gun to Norwood or gave it to Chisholm. After the shooting quit, I got up off the ground

and into Chisholm's car. Easter and Chisholm came to get in Chisholm's car and Charles said something like "He's not dead." So Charles took the other gun from Easter, I turned my head and heard more shots.

Then we left. I don't know where Easter got the gun from that he gave Norwood to do his second set of shooting. There were at least three guns out there at the scene where the shooting occurred.

Chisholm then drove to his house, stopped there a little while, and then drove to Glenwood Drive and let Charles and Easter out. They got out together.

On 21 August 1979, Norwood returned to the scene of the shooting in a rental car. With the assistance of two other men, Norwood set dynamite charges in the Cadillac, which still contained Slim's body, to destroy all of the incriminating evidence. The three men then drove over to Tega Cay, and Norwood, using a beeper communication device, requested the delivery of a red Volkswagen. Defendant, with another man, subsequently delivered the requested vehicle to Tega Cay.

Defendant did not offer any evidence. Nevertheless, the testimony of defendant's brother tended to contradict some of the State's evidence concerning defendant's participation in the confinement and restraint of Slim. Sterling Easter testified that defendant was never near the Cadillac while Slim was being handcuffed and forced into the trunk. He said that defendant was standing on a nearby porch when Norwood "commanded" him to get into the Cadillac and that defendant complied and rode off with Norwood only after some hesitation.

Defendant made a motion to dismiss the charges against him at the close of the State's evidence. It was denied. Defendant now appeals his conviction for the kidnapping of Slim Wilson.

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

*Paul J. Williams, for defendant appellant.*

VAUGHN, Judge.

At the outset, we must cite defendant's counsel for several violations of the Rules of Appellate Procedure. The record on appeal is not organized properly. The judgment and order of commitment, as well as the appeal entries, immediately follow the indictments and precede the summary of the trial proceedings. Each item in the record should be arranged chronologically, in the same order in which it occurred at trial. App. R. 9(b)(4). In addition, counsel reproduced the entire charge to the jury, which covers fifteen typed pages, but he brought forward no assignment of error to a specific portion of those instructions. Thus, one-third of the forty-four page record contains irrelevant and unnecessary matter. App. R. 9(b)(5). Finally, the appropriate assignment of error is not set out in the brief under the issue and argument. App. R. 28(b)(3). We shall, nevertheless, address the merits of this appeal.

Defendant presents a single question for our review: whether the trial court improperly denied his motion to dismiss the kidnapping charge. Defendant essentially makes a two-fold argument: (1) that the crime of kidnapping was complete once the victim was handcuffed and put in the trunk, and defendant could not, therefore, be guilty of aiding and abetting since there was no evidence that he actually assisted Norwood in those acts; and (2) that defendant's mere presence in the car, after the confinement had been accomplished, during Norwood's removal of the victim was insufficient to show that he intended to aid and abet the kidnapping. We disagree.

Defendant's position reveals that he has incorrectly interpreted the leading case of *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). In *Fulcher*, there was ample evidence that defendant had confined and restrained the victims to compel their performance of unnatural sex acts, but there was no showing that defendant had "removed" the victims to facilitate commission of the felonies. The Supreme Court concluded that defendant could, nonetheless, be charged for a violation of G.S. 14-39(a)

due to his acts of unlawful confinement and restraint alone.[1] "[T]he statute plainly [states] that confinement, restraint, *or* removal of the victim for any one of the three specified purposes is sufficient to constitute the offense of kidnapping. Thus, no asportation whatever is now required where there is the requisite confinement or restraint." 294 N.C. at 522, 243 S.E. 2d at 351. Thus, the Court merely enforced the legislature's use of disjunctive terms to define the prohibited forms of conduct in the new statute. *See* Note, Kidnapping in North Carolina — A Statutory Definition for the Offense, 12 Wake Forest L. Rev. 434, 439 & nn. 39-40 (1976).

It is obvious that *Fulcher, supra,* did not hold as defendant seems to assert, that the crime of kidnapping is always complete once the confinement or restraint of the victim is accomplished or that the act of removal, by itself, for a proscribed purpose is insufficient to sustain a conviction. Moreover, the case of *State v. Adams,* 299 N.C. 699, 264 S.E. 2d 46 (1980) expressly repudiates defendant's construction of G.S. 14-39. In *Adams,* the defendant was convicted of second degree rape, kidnapping and two counts of crime against nature. On appeal, he contended that the verdict of kidnapping could not be sustained because the element of restraint was also an inherent, inevitable feature of the sexual crimes. The Court, however, rejected defendant's reliance on *Fulcher, supra:*

> We adhere to the principle quoted from *Fulcher.* However, in the case at hand the state showed not only a restraint of the victim but that there was an asportation, that she was removed from one place to another without her consent. She testified that she was on the street near the front of the home intending to go to Mrs. Talley's home and that she unwillingly went to and entered her own home

---

1. Prior to 1975, the elements of kidnapping were not defined by statute in this State. *See* G.S. 14-39(1933). Thus, our courts applied the common law definition of the offense which required both an unlawful detention and a carrying away of the victim. *See State v. Ingland,* 278 N.C. 42, 50-51, 178 S.E. 2d 577, 582-83 (1971). The legislature, however, rewrote G.S. 14-39 in 1975 to include a statutory definition of the substantive elements of kidnapping. The new statute provides that "[a]ny person who shall unlawfully confine, restrain or remove from one place to another, any other person ... shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of: ... (2) Facilitating the commission of any felony. ..." G.S. 14-39(a) (1975) (subsections 1 and 3 omitted).

because defendant threatened to blow her brains out. Defendant admitted that he told her she was not "going any place."

. . . .

We hold that the showing of asportation in the case at hand was sufficient to support the verdict finding defendant guilty of kidnapping.

299 N.C. at 705-06, 264 S.E. 2d at 50.

In sum, we conclude that the plain wording of G.S. 14-39(a) authorizes a kidnapping conviction whenever the defendant has committed at least *one* of the underlying acts of either confinement, restraint or removal for a proscribed purpose. *See State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980); *State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980); *State v. Wilson*, 296 N.C. 298, 250 S.E. 2d 621 (1979); *State v. Martin*, 47 N.C. App. 223, 267 S.E. 2d 35 (1980); *State v. Sampson*, 34 N.C. App. 305, 237 S.E. 2d 883 (1977), *review denied*, 294 N.C. 185, 241 S.E. 2d 520 (1978). Thus, in the instant case, it is clear that defendant could indeed be convicted for kidnapping upon the State's showing that he accompanied Norwood during the removal of the victim (for the purpose of facilitating the commission of the murder), if the overall circumstances warranted the additional inference that defendant intended to aid and abet Norwood by doing so. We are not, however, convinced that the State's evidence failed to show defendant's participation in the confinement and restraint of the victim as well.

It is axiomatic that a motion to dismiss a criminal charge should only be granted when the State fails to present substantial evidence of the material elements of the crime charged, viewing all the evidence in the light most favorable to the State with the benefit of every reasonable inference arising therefrom. *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980); *State v. Avery*, 48 N.C. App. 675, 269 S.E. 2d 708 (1980). More particularly, when the premise of a defendant's criminal liability is that he aided and abetted another in the commission of certain proscribed acts, the State's evidence must show the existence of three material elements: (1) defendant's actual or constructive presence during the commission of the criminal acts; (2) defendant's intent to aid in the commission of the

offense, if it should become necessary; and (3) the communication of defendant's intent to render assistance to the actual perpetrator. *State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied*, 423 U.S. 1091, 47 L. Ed. 2d 102 (1976); *State v. Edwards*,_____N.C. App._____, 272 S.E. 2d 384 (1980). *See also State v. Small*,_____N.C._____, 272 S.E. 2d 128 (1980); *State v. Davis*, 301 N.C. 394, 271 S.E. 2d 263 (1980). Applying these principles in the instant case, we hold that the evidence passes the test of sufficiency required to withstand a motion to dismiss, in that the jury could reasonably infer defendant's guilty participation in the kidnapping of Slim Wilson. *See State v. Bright,* 301 N.C. 243, 257, 271 S.E. 2d 368, 377 (1980).

The State's evidence showed that defendant rode around with Norwood in his pickup truck until they found Slim at a restaurant. Defendant waited while Norwood confronted Slim and then followed Norwood back to Mr. Pearson's house on Oregon Street in a different car. Defendant stood by the Cadillac while Norwood held a pistol to Slim's head and handcuffed him. Defendant also went over by the trunk while Slim was being physically forced into the trunk of his own car. After Slim was securely confined, defendant again rode off with Norwood, followed by others, to a wooded area where Slim was shot. Though defendant did not actually fire shots at Slim, he did assist the perpetrators by handing them two guns. Later, Norwood and defendant returned together to Bobby White's house.

We believe that defendant's actual presence throughout this entire criminal episode, from its beginning to its end, established the necessary elements for his conviction for aiding and abetting the kidnapping. His continual presence indicated his intent to render assistance, if it became necessary at any stage of the plot, and also effectively communicated his willingness to aid to Norwood. We also hold that, viewed in the light most favorable to the State, the evidence of defendant's presence during the removal of the confined victim (by itself) provided an adequate basis for the jury to infer his intent to aid in the kidnapping. *See State v. Adams, supra*, 299 N.C. 699, 264 S.E. 2d 46 (1980).

In conclusion, the jury could reasonably find defendant's complicity in a continuous series of criminal actions, including the confinement, restraint and removal of the victim, which

enabled the principal actor to fulfill his murderous design. The case was, therefore, properly submitted to the jury.

No error.

Chief Judge MORRIS and Judge BECTON concur.