BEAM v. WORLDWAY CORP., 1997 NCBC 3

| | | |
|---|---|---|
| STATE OF NORTH CAROLINA | ) | IN THE GENERAL COURT OF JUSTICE |
| COUNTY OF GASTON | ) | SUPERIOR COURT DIVISION |
| | ) | 96-CVS-469 |
| LENA SUE BEAM, (widow of C. Grier | ) | |
| Beam), PRUE K. BEAM (widow of | ) | |
| Dewey Beam), FIRST UNION | ) | |
| NATIONAL BANK OF NORTH | ) | |
| CAROLINA, TRUSTEE and FIRST | ) | |
| UNITED METHODIST CHURCH OF | ) | |
| CHERRYVILLE, NORTH | ) | |
| CAROLINA, | ) | **ORDER AND OPINION** |
| | ) | |
| Petitioners | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WORLDWAY CORPORATION, | ) | |
| formerly known as Carolina Freight | ) | |
| Corporation, | ) | |
| | ) | |
| Respondent | ) | |

{1} This is a dissent and appraisal proceeding governed by N.C.G.S. §§ 55-13-01 through 55-13-31. The case is before the Court on respondent Worldway Corporation's motion to strike the petitioners' demand for jury trial. At issue is the petitioners' right to have a jury determine the issue of fair value under the appraisal process. A hearing was held in Mecklenburg County on August 2, 1996. The Court concludes that the petitioners in this action are not entitled to a jury trial under N.C.G.S. § 55-13-30(d) and do not have the right to a jury trial under the North Carolina Constitution.

*James P. McLouglin, Jr. of Moore & Van Allen and Craig P. Buie of Buckley, McMullen & Buie, attorneys for Petitioners.*

*Debbie W. Harden and Steven D. Gardner of Womble Carlyle Sandridge & Rice, attorneys for Respondent.*

## RELEVANT STATUTES

{2} N.C.G.S. § 55-13-30(d) provides:

> (d) The jurisdiction of the court in which the proceeding is commenced under subsection (b) is plenary and exclusive. The court may appoint one or more persons as appraisers to receive evidence and recommend decision on the question of fair value. The appraisers have the powers described in the order appointing them, or in any amendment to it. *The parties are entitled to the same discovery rights as parties in other civil proceedings. However, in a proceeding by a dissenter in a public corporation, there is no right to a trial by jury.*

N.C.G.S. § 55-13-30(d) (1990) (emphasis added).

{3} N.C.G.S. § 55-1-40 provides in pertinent part:

In this Chapter unless otherwise specifically provided:

. . . .

(14) "Means" denotes an exhaustive definition.

. . . .

(18a) "Public corporation" means any corporation that has a class of shares registered under Section 12 of the Securities Exchange Act of 1934, as amended (15 U.S.C. Sec 781).

N.C.G.S. S 55-1-40 (Supp. 1995).

{4} N.C.G.S. § 55-13-01 provides in pertinent part:

In this Article:

(1) "Corporation" means the issuer of the shares held by a dissenter before the corporate action, or the surviving or acquiring corporation by merger or share exchange of that issuer.

(2) "Dissenter" means a shareholder who is entitled to dissent from corporate action under G.S. 55-13-02 and who exercises that right when and in the manner required by G.S. 55-13-20 through 55-13-28.

(3) "Fair value," with respect to a dissenters shares, means the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects . . . .

N.C.G.S. § 55-13-01 (1990).

## FACTUAL BACKGROUND

{5} Each of the petitioners was the record or beneficial owner of shares of the 4% preferred stock of Worldway Corporation ("Worldway"). Worldway was formerly known as Carolina Freight Carriers Corporation and Carolina Freight Corporation. It was previously headquartered in Cherryville, North Carolina. The individual petitioners are widows of the cofounders of Carolina Freight Corporation.

{6} On July 14, 1995, Arkansas Best Corporation, through a wholly owned subsidiary, ABC Acquisition Corporation, offered to purchase all of the outstanding shares of common stock of Worldway. At that time, Worldway had a class of shares registered under Section 12 of the Securities Exchange Act of 1934, had in excess of two thousand shareholders, and was a "public corporation" as defined by N.C.G.S. § 55-1-40(18a). As a part of the proposed transaction, the shareholders, including petitioners, were notified that ABC Acquisition Corporation would be merged into Worldway after the purchase of a sufficient number of shares of Worldway.

{7} On or before October 11, 1995, all of the petitioners gave notice of their intent to demand payment for their respective shares of preferred stock in the event the shareholders of Worldway voted to approve the merger of ABC Acquisition Corporation into Worldway as they were required to do by N.C.G.S. § 55-13-21. Had they not done so, they would have failed to meet the necessary requirements under the statute to *"be and remain a dissenter eligible to demand payment for his shares." See* N.C.G.S. § 55-13-21 official comment (1990).

{8} On October 12, 1995, the common shareholders of Worldway voted to approve the merger of ABC Acquisition Corporation into Worldway. The merger was complete at 11:59 p.m. After the merger, Worldway had only one shareholder. It is undisputed that the merger created dissenters' rights in petitioners under N.C.G.S. § 55-13-02. That same day, Worldway sent petitioners the dissenters' notice required by N.C.G.S. § 55-13-22 to be sent to all shareholders who had complied with N.C.G.S. § 55-13-

21. The official comment to this section of the statute states: "The basic purpose of Section 13.22 is to require the corporation to tell *all actual or potential dissenters* what they must do in order to take advantage of their right to dissent." N.C.G.S. § 55-13-22 official comment (1990) (emphasis added).

{9} On October 20, 1995, effective at the opening of the trading session, Worldways common stock, formerly registered under the Securities Exchange Act of 1934, was deregistered pursuant to application by the New York Stock Exchange, Inc. At this point, Worldway was no longer a public corporation and has not regained that status. It is a wholly owned subsidiary of Arkansas Best Corporation, a public corporation.

{10} On or before November 20, 1995, Worldway had received from petitioners a written demand for payment of their shares of preferred stock as required by N.C.G.S. § 55-13-23. Had petitioners failed to make written demand, they would have waived their rights under article 13. The official comment to this section of the statute refers to the demand for payment as the "*definitive statement by the dissenter." See* N.C.G.S. § 55-13-23 official comment (1990). In the demand for payment, a dissenter must certify whether the date on which the dissenter acquired ownership of the shares was before or after the date of announcement of the proposed corporate action giving rise to the dissenter's rights. Petitioners had also deposited their share certificates as required by this section of the statute. The official comment states: "The deposit of share certificates is necessary to prevent *dissenters* from giving themselves a 30-day option to take payment if the market price of the shares goes down, but sell their shares on the open market if the price goes up." *Id.* (emphasis added).

{11} On or before November 20, 1995, Worldway had also sent to petitioners a written offer to purchase their respective shares which N.C.G.S. § 55-13-25 required be sent to all dissenters who had complied with the demand for payment requirements. That statute provides in pertinent part: "As soon as *the proposed corporate action is taken,* or upon receipt of a payment demand, the corporation shall offer to pay each *dissenter who complied with G.S. 55-13-23* the amount the corporation estimates to be the fair value of his shares, plus interest accrued to the date of payment, and shall pay this amount to each *dissenter* who agrees in writing to accept it in full satisfaction of his demand." N.C.G.S. § 55-13-25(a) (1990) (emphasis added).

{12} On or before December 20, 1995, petitioners sent Worldway the notice of their estimate of the fair value of their respective shares of preferred stock required by N-C.G.S. § 55-13-28. Failure to comply with this requirement would have resulted in petitioners resuming the status of *nondissenting shareholders. See* N.C.G.S. § 55-13-28 N.C. commentary (1990).

{13} On February 8, 1996, petitioners filed their petition to determine fair value as provided in N.C.G.S. § 55-13-30. It is undisputed that at that time, Worldway was not a public corporation as defined in the statute.

{14} At each step in the process, petitioners have complied with the statutory requirements to be and remain dissenters.

I

{15} The first issue before this Court is whether the date used to determine if a dissenter is a shareholder in a public corporation is the date the petition to determine fair value is filed or the date the corporate action is taken from which the shareholder dissents.

{16} In this case, it is clear that Worldway was not a public corporation on February 8, 1996, the date the petition for fair value was filed, and that it was a public corporation on October 12, 1995, the date of the merger which was the corporate action from which petitioners dissent. The date to which this Court looks in determining the corporation's status is determinative of the right to jury trial under the statute. For the reasons set forth below, the Court concludes that the date of the corporate action from which the petitioners dissent is the date to which the Court should look in determining whether Worldway was a

"public corporation" as defined in N.C.G.S. § 55-1-40(18a) and used in N.C.G.S. § 55-13-30(d).

{17} In interpreting N.C.G.S. § 55-13-30(d), this Court must ascertain and be guided by the intent of the legislature. *State v. Fulcher,* 294 N.C. 503, 243 S.E.2d 338 (1978). The intent and spirit of the Act are controlling in its construction. *In re N.C. Fire Ins. Rating Bur.,* 275 N.C. 15, 165 S.E.2d 207 (1969). In ascertaining that intent, the Court should look to the language of the statute, the spirit of the Act and what it sought to accomplish, as well as the changes that were made and how they should be effected. *Stevenson v. Durham,* 281 N.C. 306, 188 S.E.2d 281 (1972). N.C.G.S. § 55-13-30(d) was enacted as part of an overall revision of the North Carolina Business Corporation Act in 1989. The history of dissenters' rights prior to 1989 and the 1989 revisions are instructive in ascertaining the legislature's intent.

{18} Dissenters' rights are entirely statutory. No common law cause of action exists for dissent and appraisal. Indeed, North Carolina was one of the first states to create dissenters' rights. *See* Russell M. Robinson, *Robinson on North Carolina Corporation Law* § 27-1, at 519 (5th ed. 1995) [hereinafter *N.C. Corporation Law*]. North Carolina first enacted a dissent and appraisal statute in 1925. From that time until the 1989 revisions at issue here, the right to a jury trial on the issue of fair value existed under the statutory scheme. *See* N.C.G.S. § 55-167 (1950), § 55-113 (1982). North Carolina has historically been home to many family-owned textile, furniture, and retail companies. It has a history of protecting the rights of minority shareholders, particularly in closely held companies. *See Meiselman v. Meiselman,* 309 N.C. 279, 307 S.E.2d 551 (1983).

{19} It is against this background that the current revisions must be assessed. When the General Statutes Commission was charged with rewriting the Business Corporation Act, it delegated responsibility for creating the original draft to the Business Corporation Act Drafting Committee (the "Drafting Committee"). The Drafting Committee used the Revised Model Business Corporation Act (the "Model Act") as a basis for its work, comparing the then-existing chapter 55 with the Model Act, section by section. *See* Drafting Committee minutes of January 20, 1986. The section of the Model Act dealing with dissent and appraisal proceedings was section 13-30. It did not provide for a trial by jury in dissent and appraisal proceedings. The Drafting Committee followed the Model Act and eliminated the right to jury trial in appraisal cases. *See* Drafting Committee minutes of September 21, 1987, and October 28, 1987. It proposed to the General Statutes Commission a version of N.C.G.S. § 55-13-30 which read in pertinent part: *"The parties are entitled to the same discovery rights as parties in other civil proceedings but are not entitled to a trial by jury."* General Statutes Commission minutes of March 4, 1988. The language proposed and the Drafting Committee minutes of October 28, 1987, clearly indicate that the Drafting Committee intended to eliminate jury trials in all appraisal cases. The October 28 minutes provide:

> The committee also noted that the appraisal process, which has been liberalized by the committee, involves an adjustment of corporate rights and that a jury would have problems understanding the appraisal process. The Committee further noted that the right of appraisal is not a constitutional right but is part of the corporate contract in that it is part of what a shareholder buys into when he buys shares in a corporation.

{20} The Drafting committee's version of N.C.G.S. § 55-13-30 survived review in the General Statutes Commission unchanged and became a part of Senate Bill 280, which constituted the proposed Business Corporation Act revision submitted by the General Statutes Commission to the General Assembly. The Senate passed the bill without any change to N.C.G.S. § 55-13-30. When the bill was considered in the House Judiciary Committee, Representative Miller proposed to amend the last sentence of N.C.G.S. § 15-13-30(d) to read: "[T]*he parties are entitled to the same discovery rights as parties in other civil proceedings, but in a proceeding by a dissenting shareholder in a public corporations [sic] are not entitled to a trial by jury."* House Judiciary Committee minutes of May 30, 1989. The next day, Representative Michaux proposed to amend the last sentence of N.C.G.S. § 55-13-30(d) to read as follows, *"The parties are entitled to the same discovery rights as parties in other civil proceedings. However, in a proceeding by a dissenter in a public corporation, there is no right to a trial by jury."* House Judiciary Committee minutes of May 31, 1989. This version ultimately became law.

{21} The use of the Model Act as a basis for the revisions to the Business Corporation Act was purposeful. It helped to bring North Carolina's corporation law in closer conformity with the majority of other states. This helped provide certainty for businesses interpreting North Carolina law since there would be a broader body of case law from similar statutes giving greater guidance in interpretation. It also helped remove any unique quirks in the North Carolina statutes which would discourage corporations, particularly large public companies with operations in many states, from domesticating in North Carolina. By conforming more closely to the Model Act, North Carolina made itself more attractive to public companies to incorporate here. The Model Act provided no right to trial by jury in appraisal cases for either public or private companies. There are several valid reasons for eliminating jury trials in appraisal cases. The appraisal process can be extremely complex, especially with diversified national or multinational companies. As the Drafting Committee noted, a jury could have difficulty understanding the appraisal process. Furthermore, publicly traded companies operate in an environment where there is a market mechanism which provides a strong, if not determinative, indicator of the value of minority shares. There are federal and state statutory protections built into transactions involving publicly held companies. Information from which shareholders can evaluate transactions is readily available from public companies because of disclosure and filing requirements of the federal securities laws. In the merger or purchase of a publicly traded company, minority and majority shareholders are generally treated the same.

{22} Closely held companies present a different situation. The appraisal issues are generally less complex with smaller, less diversified, locally owned companies. There is no strong market mechanism to provide an indication of value. There are no filing or disclosure requirements. Financial information may not be readily available. Squeeze-outs of minority shareholders in closely held companies have the potential of creating disproportionate benefits between minority and majority shareholders and of frustrating minority shareholder expectations which may exist in such situations. Thus, practical reasons exist for differentiating between public corporations and closely held companies in the appraisal context.

{23} It is apparent that the legislature was faced with a conflict between the benefits of conforming to the Model Act and the tradition of preserving the rights of minority shareholders in closely held companies. There were also practical reasons for differentiating between the two ownership situations. Not surprisingly, a compromise was reached which followed the Model Act with respect to public corporations and preserved the right to jury trial for minority shareholders in closely held corporations.

{24} The changes from the language and structure of the last sentence in the Drafting Committee report to the last two sentences of the statute as enacted demonstrate that the distinction was being made between publicly held and privately owned companies. When that decision was made, the language had to be changed to differentiate (a) those civil proceedings in which a jury trial would not be afforded, and (b) those civil proceedings referred to in the first part of the original sentence. The change was made in a manner that deviated as little as possible from the Model Act and the Drafting Committee's proposal.

{25} The purpose behind the legislative action is instructive on the issue before the Court because the transaction to which petitioners dissent was a transaction involving a public corporation. The shareholders in the corporation were thus afforded the protection of a market mechanism for valuation, full disclosure, public information, and a similar treatment of all shareholders. This was not a transaction in a closely held corporation whose shareholders did not have those protections.

{26} The Worldway/ABC merger is typical of the common practice of a parent company using a wholly owned subsidiary or acquisition corporation as a vehicle to accomplish the purchase of a publicly held company. The acquiring corporation and the acquired corporation are frequently merged, and the surviving corporation becomes a wholly owned subsidiary of the parent corporation. There is nothing in the statutory history or language to suggest that the legislature, by amending the Drafting Committee's language, meant to extend the right to jury trials in those situations. It is far more likely that the legislators were concerned with providing a jury trial to shareholders in corporations which were closely held at the time of the transaction giving rise to dissenters rights.

{27} Focusing on the transaction also helps clarify the issue from the perspective of interpretation of the specific language and the statutory scheme. To dissent is to withhold assent. *Merriam Webster's Collegiate Dictionary* 336 (10th ed. 1993). The action from which petitioners are withholding assent is the merger of Worldway and ABC Acquisition Corporation. Assent is being withheld from the action of a corporation in which the shareholder had an ownership interest. See the definition of "corporation" in N.C.G.S. § 55-13-01(l) set out above. Petitioners' position that a "dissenter in a public corporation" must refer only to a shareholder who has withheld assent from an action *and* filed a petition to determine fair value after the action has been taken is not supported by logic or the statutory scheme. The statutory focus is clearly on the time of the transaction from which the shareholder dissents. "Fair value" must be determined just before that time, not at the time of trial. It is only logical that the time to determine the status of the corporation for the purpose of ascertaining the right to a jury trial should be the same as the time of the corporate action triggering the right. Nor is petitioners' position supported by the statutory scheme. As the factual background set forth above (particularly the passages in italicized print) indicate, pursuit of dissenters' rights involves a series of steps. At each step, dissenters must take certain actions to become and remain dissenters. The status of dissenter may be gained and lost prior to the filing of a petition to determine fair value. Accordingly, article 13 as a whole does not support an inference that "dissenter in a public corporation" as used in N.C.G.S. § 55-13-30(d) refers only to a shareholder who has filed a petition.

{28} Petitioners argue that the definition of "dissenter" in N.C.G.S. § 55-13-01(2) supports their position. That definition does just the opposite. It defines a dissenter as a shareholder who exercises his or her rights "when and in the manner required by G.S. 55-13-20 through 55-13-28." It thus specifically defines a dissenter without reference to the filing of a petition as set forth in N.C.G.S. § 55-13-30. Petitioners fit the description of a dissenter in a public corporation perfectly.

{29} Focusing the determination of dissenter status at the time of the corporate action has the practical benefit of fixing the determination at one point in time. Under petitioners' theory, the determination could change from time to time after the action depending on the public or private status of the surviving company in the merger. It is unlikely the legislature intended to create such a moving target.

{30} The legislative history, the purpose of the statute, the language, and the statutory scheme all support the conclusion that in a proceeding initiated by a shareholder withholding assent from an action of a public corporation giving rise to dissenters' rights, there is no right to trial by jury on the issue of fair value.

II

{31} The second issue before this Court is whether petitioners have been unconstitutionally deprived of their right to a trial by jury.

{32} Petitioners contend that if the North Carolina Business Corporation Act is read to deprive them of a jury trial on the issue of fair value, it is unconstitutional. The Drafting Committee considered that argument and rejected it. *N.C. Corporation Law* § 27-4, at 529 n.8. The Drafting Committee was correct because dissenters' rights are a statutory creation and were not in existence at the time the North Carolina Constitution was adopted in 1868. There was no common law right to dissent and appraisal. The right was first created in 1925 by statute. Thus, the right to a jury trial on the issue of fair value could only be created by express language in the statute. *Kiser v. Kiser,* 325 N.C. 502, 385 S.E.2d 487 (1989). Such express language does not exist in article 13; to the contrary, the express language eliminates the right to a jury trial.

**CONCLUSION**

{33} Petitioners are "dissenters in a public corporation" as that term is used in N.C.G.S. § 55-13-30(d). That statute expressly denies their right to a trial by jury on the issue of fair value. The denial is not a violation of their constitutional rights. Respondents' motion to strike petitioners' jury demand should be granted.

{34} It is therefore, ORDERED that the demand for a jury trial in this action be stricken.


This 23rd day of October, 1997.